## BAUER v. ST. L., I. M. & S. RY. Co.

1. RAILROADS: *Negligence. Injury to employe.*

When a person enters into the employ of another he assumes all the risks ordinarily incident to the business, and cannot recover for injuries resulting therefrom, unless the employer has, or by the exercise of ordinary care would have, knowledge or information that the particular employment is, from extraneous causes known to him, more hazardous or dangerous than it fairly imports, or is understood by the employe to be, and fails to inform the latter of the fact or of the information. In which case he will be liable to the employe for all the consequences resulting to him from the lack of such information.

2. SAME: *Same.*

A person engaged in the service of a railroad company as car inspector with a full knowledge of the dangers incident to the service, who is injured while in discharge of his duties by an engine of another company running over the same tracks at the station for making up its trains, by lease from his employer, through the negligence of the engineer of the lessee company in running the engine, cannot recover damages from the company employing him.

3. SAME: *Contributory negligence.*

In order for an employe to maintain an action against his employer for negligence he must himself be free from negligence contributing to the injury.

APPEAL from *Pulaski* Circuit Court.

Hon. F. T. VAUGHAN, Circuit Judge.

*Clark & Williams* for appellant.

The court erred in amending plaintiff's first instruction, and in giving it as altered, and in giving the first, second, third and fourth instructions for appellee. *5 B. J. Lea (Tenn.), 546; 56 Iowa, 337.*

These instructions are wrong :

*First*—They tell the jury that the defendant was *not* guilty of negligence by not seeing Bauer on the track.

*Second*—That Bauer was guilty of contributory negligence by not seeing the engine in time to save himself.

See *36 Ark., 371; 40 ib., 336; 37 ib., 562; 39 ib., 491; 5 N. Y., 887; 36 Ark., 41; 6 Wait's Act. & Def., p. 584; ib., 586–595–6; 51 Me., 325; 10 Mees. & Welsb., 546; 3 Allen, 176; 6 Gray, 505; 58 Me., 199; 23 N. W. Reporter, 14; 21 ib., 633; 49 N. Y, 47; 13 N. Y., 533; 11 N. W. Rep., 55; 21 ib., 536; Sher. & Red. on Neg., sec. 31, note 1; Whart. on Neg., sec. 323; 76 Ill., 25; 74 N. C., 655.*

So, in the case at bar, it is not sufficient to say that because Bauer was on the track that he did not see the engine coming; that he was a man of full age, and might have seen the engine and got off the track; if he had kept a lookout, etc., the injury would not have happened. These will not constitute the juridical cause of the injury. Undoubtedly they were conditions without which the injury would not have happened—but there is no causal connection between these conditions and the injury. Suppose a man engaged under a car repairing it, and is killed by a sudden and negligent pushing the car from its place, would the fact of his being under the car be any cause of his injury? *59 Wis., C. 127.* Unquestionably if he had' not been there he would not have been killed. Now, the case of Bauer here was radically the same. He was employed to inspect all the trains on that yard as they came and departed. He was in his proper place when he was injured. He owed no duty at all to keep a lookout for such an engine as this coming over the track. There was no causal connection therefor between his not looking and seeing the train and the injury. In no sense can the case be likened to the case of a traveler crossing a railroad track at a public

crossing, where it has been often held that he cannot recover for an injury unless he looked both up and down the track, for in that case the train is expected to be running at full speed—the traveler has no business or right on the track at all except to cross and go about his business. His failure to look, in such case, is negligence contributing to the injury; *i. e.*, a juridical cause of the injury, because common prudence would dictate that he should anticipate the danger of such passing train, and yet even this failure to look is not negligence *per se*, and is often no objection to a recovery. See *Ferguson v. Wis. Cent. R. R. Co., 23 N. W. Reporter* (pamph.), where the court say : " The jury may well have found, from the testimony, that the noise of the car on the track was drowned by that made by the passing engine; that when he stepped upon the track he was so enveloped in the smoke and steam from the engine that he could not see the approaching car, and that he did not know or have any reason to suspect that a running switch was being made;" and the court cites *Butler v. Milwaukee & St. P. Ry. Co., 28 Wis., 487.* Yet the court below took the view that Bauer's case was exactly like that of a traveler crossing the track on a highway and injured by failure to look up and down for a train, and no argument could induce the court to see the facts in any other light, and hence these erroneous instructions. And see *Brown v. N. Y. C. R. R. Co., 32 N. Y., 597; Butler v. M. & St. P. R. Co., 28 Wis., 487; McGovern v. N. Y. C. & H. R. R. Co., 67 N. Y., 417; French v. Tallston Branch R. R. Co , 116 Mass., 537.*

*Dodge & Johnson* for appellee.

We shall not undertake to follow appellant's counsel in his objections to the four instructions given upon defendant's request.

The theory upon which the defendant's counsel based their propositions of law, was this:

*First*—That Bauer was in the employ of defendant as car inspector; that in order to discharge his duties as such, he was necessarily required to be on and about the different tracks in defendant's yards, and in consequence, in order to do this work and carry out the object for which he was employed, he necessarily assumed all the ordinary risks of such employment.

*Second*—That if Bauer, assuming all the ordinary risks incident to the employment, found that where he was compelled to work was a railway yard upon which were many parallel tracks, great noise and confusion caused by passing and repassing engines and cars, then it became his duty to be more vigilant and careful, and to exercise more caution, because of this increased danger.

*Third*—That if, with all the knowledge necessarily gained in the daily performance of his duties for three years, Bauer walked on the main track when there was ample room on either side (eight or ten feet space as shown by the evidence), and by so doing chose the more dangerous place without any impelling necessity, or his duties requiring it, then he alone assumed all risk and was to blame; and,

*Fourth*—That unless Bauer was weak-minded, or defective in hearing, and that such defects were known to defendant's servants, they had a right to presume that he was of sound mind and good hearing, and need not act otherwise. See *114 U. S., 617; 95 U. S., 762; 22 Minn., 165; 24 N. W. Rep., 423; 1 ib., 37; 6 Pac. Rep., 529; 1 N. W. Rep., 606; 34 Iowa, 160; 4 N. W. Rep., 783; 7 Fed. Rep., 766; 8 ib., 489; 1 Dillon, 579; 36 Ark., 46–50; ib., 377; 4 ib., 549; 95 U. S., 439; Beach on Cont. Neg., p. p. 10–11, and notes to Davies v. Mann, 10 Mees. & W., 546.*

BATTLE, J.   On the 14th day of June, 1883, Frederic Bauer, the father of appellant, was killed by a locomotive of the Texas & Pacific Railroad Company in the yard and on the track of the St. Louis, Iron Mountain & Southern Railway Company, at Texarkana, in this state. He left Minnie Bauer, his widow, and Frederic W. Bauer, his only child and sole heir and distributee, him surviving. Frederic W. Bauer instituted this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damages suffered on account of the killing.

The facts in this case are substantially as follows:

The road of the Texas & Pacific Railroad Company connects with the defendant's road at Texarkana. The defendant had a great many tracks running parallel to each other through its yard at that place. The Texas & Pacific had no separate yard at that place, but some time previous to and on and after the 14th day of June, 1883, had used the tracks, depot and round-house of the defendant. Frederic Bauer was and had been in the service of the defendant, at Texarkana, as car inspector, for three years, at the time he was killed. On the morning of June 14, 1883, he was on duty, and had been inspecting the incoming trains as they arrived. There were at this time many trains running on the various tracks, and very much noise and confusion. There was, as the witnesses say, a great rush of trains, coming and going on the several tracks that morning, making a great noise by the blowing off of steam, ringing of bells, etc. Bauer had inspected one train, and in proceeding to another portion of defendant's yard, stepped on one of its tracks, and was walking on it when he was run over and killed by an engine of the Texas & Pacific Railroad Company backing to defendant's round-house along the track on which he was walking, and was running at the rate of about four miles an hour.

At the time he stepped on the track he was about the length of the tender in front of the approaching engine, with his back towards it, and had walked forty or fifty feet on the track when the engine struck him. This was about 9 o'clock in the morning. Bauer, it seems, did not see or hear the engine coming, and the engineer in charge of the engine did not see Bauer before he was struck. The engine had been taken out of the defendant's round-house to the south end of the yard to take a train out to Texas, but the purpose of taking the train out was abandoned, and the engine ordered back to the round-house, and the engineer in charge was taking the engine back when the accident happened. The engineer was in the employment of the Texas and Pacific Railroad company. There was a space of eight or ten feet between the track on which Bauer was killed and the tracks nearest to it on each side.

The plaintiff asked the court to give two instructions to the jury, which are as follows:

*First*—" That if the jury believe that said Frederic Bauer was an employe of the defendant company, and charged with the duty of inspecting the trains of the defendant, and the cars of such trains at and within the yard of the defendant at Texarkana as such trains arrived and departed, it was the duty of the company to warn the said Bauer of any extraneous and unexpected dangers to him in the exercise of such duty, which were known to the company, or which, in the exercise of ordinary care, should have been known."

*Second*—" That if the jury believe that the deceased, Bauer, was employed as car inspector within the yard at Texarkana and that while engaged in such employment, he was run over and killed in the yard by a locomotive and tender of the Texas & Pacific railway, not belonging

to the defendant company, but in the yard by defendant's consent, then the defendant company are liable for such death, unless the evidence shows that said deceased was warned by his company, or had knowledge or reason to know that said locomotive and tender would be on said track in defendant's yard at the time and place where the killing took place."

The court changed the first instruction by adding the words: "Unless Bauer, from his position and experience, must or ought to have known of such extraneous or unexpected dangers," and gave it as amended. The second was given as asked.

The court, then, upon request of the defendant, gave the following four instructions against the objection of the plaintiff, and exceptions were saved:

*First*—" If the jury find from the testimony that the deceased was, at the time of the accident, in the employment of the defendant, and that the discharge of his duties required him to be on and about the different tracks in defendant's depot yard, then the deceased (plaintiff's intestate), is in law considered to have entered upon such employment, assuming himself the ordinary risks of such employment; and if the jury find from the evidence *that one of the ordinary risks of such employment was the danger of being run over by an engine or cars; then if he was so run over, and the cause of such accident was a lack of prudence on his part, defendant cannot be held responsible for the result, unless, after becoming aware of the want of care on the part of the deceased,* the defendant's servants negligently caused the engine to run him down.

*Second*—" If the jury find from the testimony, that the point where the accident happened was the depot yard and grounds of the defendant; that there was a large number of parallel tracks; that there was a great noise

and confusion, caused by the passing and repassing of engines and cars; that the plaintiff's intestate, Bauer, was familiar with all the usual circumstances and surroundings of the vicinity, then it was the duty of Bauer to observe care and caution commensurate with the dangers to be avoided (and the greater the noise and confusion, and the number of cars and engines so passing, the greater the necessity on the part of Bauer to observe care and caution); and if the jury find from the testimony, that he failed to observe the degree of care and prudence necessary, under the circumstances, and that such failure on his part directly contributed to the injury, then the plaintiff cannot recover, unless they further find that the engineer failed to make any effort to stop after he discovered the neglect of Bauer in not looking out for his own safety.

*Third*—" If the jury find from the testimony that the deceased, Bauer, was walking on the railway track at a point where he had reason to anticipate the frequent passing of engines and cars, that upon either side of said track there was sufficient space between said parallel tracks for him to have walked in safety, his choosing the more dangerous, if you so find, in preference to a safer path, without any impelling necessity, was such an act of contributory negligence as to preclude a recovery in this case, and the jury must find for the defendant, *unless they further find from the testimony that the person in charge of the engine which caused the injury negligently and willfully failed to give warning after seeing Bauer upon the track.*

*Fourth*—" Unless you find from the testimony that there was some defect of the mind or hearing of the person walking on the track, and that defect was known to the engineer or person engaged in running the engine, then such person so engaged should be justified in taking it for granted that the person walking on the track—if the jury

find that the engineer saw said person—was of sound mind and good hearing, and that he would take such an ordinary precaution for his own safety as to step off the track in time to avoid being struck; and the engineer is only *responsible for not making all possible efforts to stop the engine after he discovered, in exercising the judgment of an ordinary prudent man, that the person on the track is not taking any precaution to save himself.*"

The jury returned a verdict, and the court rendered judgment in favor of defendant against plaintiff. Plaintiff moved for a new trial; (1) because the verdict was contrary to the evidence; (2) because the verdict was contrary to law ; (3) because the court erred in refusing to give to the jury the first instruction asked for by him, and altering it and giving it as amended; (4) because the court erred in giving to the jury the first, second, third and fourth instructions asked for by the defendant, and each of them. The motion was overruled, and plaintiff filed his bill of exceptions, signed by the judge, and appealed.

1. NEGLI-
GENCE:
Injury to
employe.

When a person enters into the employ of another he assumes all the risks ordinarily incident to the business. " He is presumed to contract with reference to all the risks ordinarily incident to the employment; consequently he cannot recover for injuries resulting to him therefrom." But if the employer has, or in the exercise of ordinary care, would have " knowledge or information showing that the particular employment is, from extraneous causes known to him, hazardous or dangerous to a degree beyond that which it fairly imports, or is understood by the employe to be, it is his duty to inform the latter of the fact, or put him in possession of such information ; " and failing in this respect, he is liable to his employe for all the consequences resulting to him from the lack of such infor-

mation. *Baxter v. Roberts, 44 Cal., 187; Wood on Master and Servant, chapter 15.*

In *Clark v. Chicago, Burlington & Quincy Railroad Co., 92 Ill., 43,* it was held that "a person engaged in the service of a railroad company as an engine-driver, with full knowledge of the danger incident to the service, who receives an injury while in the discharge of his duties, by a collision with a train of another company using the same part of the road under a lease from his employer, through the negligence and recklessness of the employes of the lessee company in running the train in violation of the reasonable rules of the lessor company, cannot recover damages of the company employing him, such an accident being one of the ordinary risks of the service, and not attributable to any negligence on the part of the employer." Mr. Justice Scott, in delivering the opinion of the court, said: "The running of trains is known to be a dangerous occupation, and that in which plaintiff was engaged was, no doubt, rendered more so by reason of the fast trains that were run over the same track by two distinct companies. But it cannot, with any show of reason, be claimed that plaintiff was injured by anything that defendant did to render the service more dangerous than it was known to him to be before he engaged in it. Opportunity was afforded him to ascertain and become familiar with the work to be performed and the peculiar dangers to which he would be exposed, and knowing them as well as he did, the law is well settled that he assumed all the ordinary risks incident to his engagement. The negligence of the employes of the lessee company is one of the hazards against which it must be presumed he contracted. There is no warrant in law or in any consideration that concerns the public welfare, for the proposition that defendant impliedly contracted with plaintiff that the employes of the lessee

2. Same:

company would observe strictly the rules adopted to secure safety in the running of trains over the road in which both companies were engaged.   Experience teaches that in no service do the employes always observe due care.   In railroad, as well as in other hazardous labor, every cautious person cannot but anticipate that there may be omissions of duty on the part of employes that might expose co-employes to injuries.   Such are among the ordinary exposures, and if a party is unwilling to assume such risks, he must not engage in the service.   It is a matter of no consequence whether plaintiff was in a common employment with the servant of the lessee company, whose negligence or willfulness caused the injury.   Plaintiff was not injured by any cause outside of the ordinary perils of the service in which he was engaged.   He was exposed to no new dangers by any negligent conduct of defendant that he could not have anticipated before he entered upon the performance of his engagement."

The defendant, therefore, is not responsible for the negligence of the engineer who was in charge of the engine which killed Bauer.   He was a servant of the Texas & Pacific Railroad Company.

It is said, however, that the engine which ran over Bauer had been taken out in the morning to take out a Texas train, but the trip had been abandoned and the engine came back through the yard, unexpectedly, at the time it struck Bauer; and that there is no evidence that Bauer had any reason to expect it along at that time. Neither is there any evidence that he did not, or that the defendant was guilty of negligence in its passing along at that time.   Bauer had been in the service of defendant, at Texarkana, for three years, as car inspector.   In that time the Texas & Pacific Railroad Company had been using the yards, tracks, depot and round-house of the de-

fendant.   He knew, or ought to have known, that defend-
ant and connecting companies could not move their loco-
motives when their trains were being made up, or when
being broken up, according to a time table, and that the
locomotives, at all times, would not pass up and down the
tracks at stated or certain times.

In order for an employe to maintain an action against
the employer upon the ground of his alleged negligence,
he himself must be free from negligence contributing to
the injury.   *Shearman & Redfield on Negligence* lays down
the rule thus:   "One who is injured by the mere negli-
gence of another cannot recover at law or in equity any
compensation for his injury, if he, by his own or his
agents' ordinary negligence or willful wrong, contributed
to produce the injury of which he complains; so that, but
for his concurring and co operating fault, the injury would
not have happened to him; except where the direct cause
of the injury is the omission of the other party, after be-
coming aware of the injured party's negligence to use a
proper degree of care to avoid the consequences of such
negligence."   *Shearman & Redfield on Negligence, sec. 25;
Wood on Master and Servant, sec. 456.*

Mr. Justice Swayne, in delivering the opinion of the
court in *Railroad Co. v. Jones, 95 U. S., 439,* said: "Neg-
ligence is the failure to do what a reasonable and prudent
person would ordinarily have done under the circum-
stances of the situation, or doing what such a person under
the existing circumstances would not have done.   The
essence of the fault may lie in the omission or commission.
The duty is dictated and measured by the exigencies of the
occasion.   One who by his negligence has brought an injury
upon himself cannot recover damages for it.   Such is the
rule of the civil and of the common law.   A plaintiff in such
cases is entitled to no relief.   But where the defendant

3. Contrib-
utory neg-
ligence.

has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such cases is: First, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or, second, whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened. In the former case the plaintiff is entitled to recover. In the latter case he is not. *Tuff v. Warman*, 5 C. B. N. S., 573; *Butterfield v. Forrester*, 11 East, 58; *Bidge v. Grand Junction Railroad Co.*, 3 M. & W., 244; *Davis v. Mann*, 10 ib., 546; *Clayouls v. Detheck*, 12 Q. B., 439; *Van Lien v. Scoville Manufacturing Co.*, 14 Abb. (N. Y.) Pr. N. S., 74; *Ince v. East Boston Ferry Co.*, 106 Mass, 149."

In *Schofield v. Ch., etc., Ry. Co.*, 114 U. S., 617, Mr. Justice Blatchford, in delivering the opinion of the court, said: " Where a person in a sleigh, drawn by one horse, on a wagon road, approaches a crossing of a railroad track with which he is familiar, could have seen a coming train during its progress through a distance of seventy rods from the crossing if he had looked from a point at any distance within six hundred feet from the crossing, and was struck by the train at the crossing and injured, he was guilty of contributory negligence, even though the train was not a regular one and was running at a high rate of speed, and did not stop at a depot seventy rods from the crossing in the direction from which the train came, and did not blow a whistle or ring a bell between the depot and the crossing."

In *Williams v. C. M. & St. P. Ry.*, 24 N. W. Rep., p. 423, Judge Cassaday said: " But the fact is conclusively established by the evidence that had the driver, while approaching the crossing, exercised ordinary vigilance in looking

in the direction of the coming engine, he would have dis-
covered it in time to have stopped his team before reaching
the railroad track, and thus have prevented the injury.
Failing so to do, he was clearly guilty of contributory neg-
ligence under all the authorities. In support of this, the
respondent's counsel have cited so many cases that we do
not feel called upon to cite any."

But counsel for appellant say Bauer's case was not like
that of a traveler crossing the track on a highway and
injured by a failure to look up and down for a train.
They say: "He was employed to inspect all the trains on
that yard as they came and departed. He was in his
proper place when he was injured. He owed no duty at
all to keep a lookout for such an engine as this coming
over the track. There was no causal connection therefor
between his not looking and seeing the train and the
injury. In no sense can the case be likened to the case of
a traveler crossing a railroad track at a public crossing,
where it has been often held that he cannot recover for an
injury unless he looked both up and down the track, for
in that case the train is expected to be running at full
speed—the traveler has no business or right on the track
at all, except to cross and go about his business. His fail-
ure to look, in such case, is negligence contributing to the
injury; *i. e.*, a juridical cause of the injury, because com-
mon prudence would dictate that he should anticipate the
danger of such passing train, and yet even this failure to
look is not negligence *per se*, and is often no objection to a
recovery."

The opinion of the court in *Holland v. Chicago, Milwau-
kee & St. Paul Railway Company*, *18 Federal Reporter*, *243*,
is a satisfactory answer to this argument. The facts in
that case are as follows: The plaintiff was in the employ
of the railroad company as a laborer, engaged in the exca-

26–46

vation of a certain part of the defendant's road known as
the short line.   The tools which were used in this excava-
tion were kept on one side of the track in a tool chest, and
it was conceded it was a proper place or site for the tool
chest, which was provided for the work upon the bank.
The place where this tool chest lay was on the opposite
side of the bank from where the excavation was being
done, and across the railroad track, and at that place there
were three or four tracks.   The plaintiff came down to his
work in the morning, and when he came there, in order to
reach the tool chest, he had to cross these tracks.   He went
that way across the tracks the first day to obtain his tools,
and the second morning he came down the same way to
go to his work, where he had a perfect right to cross.   As
he came down that morning he discovered upon the first
track some empty flat-cars that were being pulled out of
the way, or had just gone out of the way, so that he could
get past the track without difficulty.   Then, upon the next
track, when he came to that, he looked up and down the
track for the purpose of seeing whether there was any-
thing in his way to prevent his crossing, and coming in
one direction he saw a freight train that was coming down
on that second track.   He waited for the train to go by.
After the freight train passed by he passed immediately in
the rear of it on to the main track, and in doing so he
walked in front of a passenger train of cars coming toward
him, and was injured by it.

Judge Shiras, in delivering the opinion of the court,
said:   "A very ingenious argument has been made by
counsel for plaintiff, based upon a line of authorities pro-
duced before the court to show that, under the circum-
stances, the plaintiff had a right to do what he did, upon
the theory that in the first place he had a right to rely
upon the fact that the company itself would do whatever

was proper for the company to do for his protection, in giving signals, or whistling, or warning him by ringing a bell, or anything that it should have done to protect its employes; that he had a right to rely upon it that the company would do all that care and prudence upon its part would require to be done; and that the court must hold that, under the evidence, the company did not do what was required of them, because there was no signal or warning given to the employes of the coming of the train.

"Argument is also made, based upon a line of authorities cited, that where the employe is, by reason of his employment, placed in a dangerous position, and he is required to devote his time and attention to the work that he is engaged in doing, that that will excuse him from being as alert as he otherwise would be to the danger of his position. The rule laid down in the authorities cited is to be applied when the facts of the case require it, and this arises ordinarily in cases in which the employe is required, by the very work he is to do, either to be upon the track, or in some place of danger. Many cases arise where employes are required to go upon or under cars to make repairs on the cars while on the track. It is plain that where the railroad company requires an employe to go under a car to repair it, the duty devolves upon the company to see that no other car is sent down upon that car, so as to move the car upon which the employe is at work. Or in case an employe is sent to work in a place where danger lies *while he is performing* such work, he has a right to rely upon the company exercising due care to protect him in his work.

"In the *Derrick Case, 106 Mass., 461* (*Goodfellow v. Railroad Co.*), cited by plaintiff's counsel, where the employes were required to be on the track and hold a rope attached to a derrick, it was necessary, for the safety and protec-

tion of others, that the men who had hold of the rope should give their attention to that matter. When they were placed in that position, and the railroad company knew that fact, there was a duty laid upon the railroad company to see that no injury happened to them; and in all these cases, extreme as they are, the rule is still recognized by the courts that the employe is not relieved from exercising the care which he should exercise, considering the work in which he is engaged. In other words, if there is recklessness and carelessness on the part of the employe, it will still defeat his right of recovery.

"Now, in this case, the undisputed evidence, as I said before, shows that the man was not engaged in any work that required his attention. He was simply walking across the track, and if there is anything that becomes automatic, it is the act of walking or going from one place to another. We do not direct our attention to the act of lifting one foot and then putting it down; it is done without the exercise of thought on our part, and is necessarily an automatic action. It was not necessary for him to give much attention to it, aside from the fact of where he was walking. When he walked, he walked automatically. A man, when he is walking, can give his attention to what is taking place about him. It is a very different state of facts from where a man is required to do a mechanical piece of work, and where he cannot do it properly unless he directs his time and attention to that piece of work. In this case, therefore, the query is whether the jury would be justified, under the state of facts as narrated by the plaintiff and his witnesses, in saying that where a person is coming down for the purpose of crossing a railroad track, or an employe is coming down for that purpose, where are several tracks, and he finds a train upon one track, and waits for that to pass him, and after that goes

past him he can deliberately walk across to another track, on which he knows trains frequently run, without using his senses of sight and hearing, and still be in the exercise of due care.

*     *     *     *     *     *

" To my mind the plaintiff's own testimony shows clearly that there was culpable carelessness on the part of this plaintiff; and if the jury should find, on its being submitted to them, that he was in the exercise of due care (and otherwise they could not find a verdict for him) it would be my duty to set the verdict aside."

We find no error in the instructions given to the jury prejudicial to appellant. Construed as a whole and according to their manifest intent, they are correct. The questions of fact in the case were fairly submitted to the jury, and the verdict was sustained by sufficient evidence. We think that the court below did not err in overruling the motion for a new trial, and the judgment must be affirmed.