Shoner v. The Pennsylvania Company.

Filed January 8, 1892.

---

No. 15,058.

## SHONER v. THE PENNSYLVANIA COMPANY.

INTERROGATORIES.—*Presumption of Submission to Jury.*—If the record shows a request for answers to interrogatories in case a general verdict be returned, and a general verdict and interrogatories with answers be returned, it will be presumed that the court submitted such interrogatories to the jury.

SPECIAL FINDINGS.—*Irreconcilability.*—*Sufficiency to Overturn General Verdict.*—To overthrow the general verdict the special findings must be irreconcilably in conflict with it upon any reasonable hypothesis.

SAME.—*Reconcilable with General Verdict Under any State of Facts.*—*Evidence.* —A general verdict is not controlled by the special findings if such findings are reconcilable with each other under any supposable state of facts provable under the issues, without reference to the evidence.

SAME.—*Presumption in Aid of.*—The court will not presume any thing in aid of the special findings, but will make every reasonable presumption in favor of the general verdict.

SAME.— *When will Prevail.*—If the special findings can not be reconciled with the general verdict, the former must prevail.

NEGLIGENCE.— *When Question for Court.*— *When for Jury.*—Where the facts in an action for negligence are undisputed, and the inferences which may be drawn from them are unequivocal, and can lead to only one conclusion, the court will adjudge as a matter of law that there was, or was not, negligence; but if the facts are disputed or equivocal, and different inferences can reasonably be drawn from them, the question of negli-

Shoner *v.* The Pennsylvania Company.

gence must be determined by the jury under the instructions of the court.

SAME.—*Traveller Approaching Railroad.—Failure to Look.—Inferences Drawn by Court.*—A traveller approaching a railroad with the intention of crossing is bound to know that to attempt to cross near and in front of a moving train involves danger; and if he does not look and listen the court will draw the inference that his act contributed to the injury.

SAME.—*Servant Working at Crossing.—Right to Presume Signals will be Given. —Must Use Care to Avoid Injury.*—A servant rightfully working upon the track of a railway is justified in assuming that those in charge of moving trains will obey an express mandate of the law requiring signals to be given at crossings ; but this does not absolve him from the necessity of using reasonable care, proportioned to the dangers incident to his work and position, to avoid injury to himself.

SAME.—*Rule Applicable to Travellers Approaching and to Servant Working on Track.*—The rule applicable to a traveller approaching a track, requiring him to look, and attributing to him contributory negligence if he do not, is not applicable to a servant of the company on the track repairing it.

SAME.—*Servant.—Presumption of Knowledge Arising from Showing His Acquaintance with Locality and Duty of Servants in Running Trains.*—Where a servant is injured at a railway crossing by a moving train, which crossing he has known for several years, the courts will presume, in the absence of a showing to the contrary, that during these years the employees of the company, working at that point, had been observant of the duty of reciprocal care for the safety of each other which the law imposes upon them, and obedient to the law relative to the running of trains over crossings, and the injured servant with knowledge of such facts would be justified in acting on the assumption that such careful observance of duty would continue.

PRACTICE.—*Judgment on Reversal.— When will not be.—Order Entered on Interrogatories.*—On reversal of a judgment entered on the special findings of the jury, the Supreme Court will seldom order the entry, by the lower court, of a judgment on the general verdict ; but will order that a new trial be granted, unless the entire record below *is* in the transcript and affirmatively shows that no injury would be done the appellee by entry of a judgment on the verdict.

SAME.—*Rules of Practice Must be General.*—Rules of practice must be general, and should be framed with a view to insuring, so far as possible, just results in all cases, aud minimizing the danger of injustice being done to parties in any case.

From the Fulton Circuit Court.

*J. D. McLaren* and *E. C. Martindale,* for appellant.

*J. Brackenridge* and *A. Zollars,* for appellee.

McBRIDE, J.—The appellant was a section hand in the service of the Terre Haute and Indianapolis Railroad Company, known as the "Vandalia" road.

The track of the Vandalia road crosses that of the appellee "at grade" at Plymouth, Marshall county, and the crossing of the two tracks was embraced in the section on which the appellant worked. On the morning of December 5th, 1887, the appellant and a co-employee, named Sullivan, were engaged in making some repairs to the track at the crossing, and while thus engaged were struck by a baggage-car which was being pushed over the crossing by one of the appellee's locomotives. Sullivan was killed, and the appellant was severely injured. This suit was to recover for the injuries thus sustained by the appellant.

The trial resulted in a general verdict in his favor. Interrogatories were submitted to the jury by both parties, and were answered. The court, on motion of the appellee, rendered judgment in its favor on the answers to interrogatories, notwithstanding the general verdict. The appellant insists that this was error, for the following among other reasons :

1st. That the interrogatories are not properly in the record, and can not be considered as affecting the general verdict.

2d. There is no such inconsistency between the answers to interrogatories and the general verdict as will justify disregarding the latter.

The record shows that both parties submitted interrogatories, and asked that the court require the jury to answer them if they returned a general verdict. It does not affirmatively appear from the record that the court did submit them and instruct the jury to answer them, but the record shows that the jury did answer them. The case of *Cleveland, etc., R. W. Co.* v. *Bowen*, 70 Ind. 478, cited by the appellant, and the cases of *Hervey* v. *Parry*, 82 Ind. 263, *Aiken* v. *Ising*, 94 Ind. 507, and *Hamilton* v. *Shoaff*, 99 Ind. 63,

would sustain appellant's contention, but those cases have been overruled on that proposition by the later case of *Frank* v. *Grimes*, 105 Ind. 346.

Section 546, R. S. 1881, provides that "In all actions, the jury, unless otherwise directed by the court, may, in their discretion, render a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues; and in all cases, when requested by either party, shall instruct them, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing. This special finding is to be recorded with the verdict."

The record, showing as it does, that the parties in compliance with the statute, requested the court to require the jury to answer the interrogatories, if they returned a general verdict, and that the jury did return a general verdict, and did also, in fact, answer the interrogatories, it will be presumed that the court did its duty, and instructed and required the jury to answer them, unless the contrary is affirmatively shown by the record. We fully approve the rule as laid down in *Frank* v. *Grimes*, *supra*. The interrogatories and their answers are properly in the record.

The law is well settled that to justify overturning the general verdict, and rendering judgment on the special findings, there must be irreconcilable conflict between them. If the special findings can, upon any reasonable hypothesis, be reconciled with the general verdict, the latter will control, and the court can not render judgment against the party who has the general verdict in his favor. This has been so many times decided, and never even questioned, that it is unnecessary to cite any authorities in its support. It is also equally well settled that a general verdict will not be controlled by special findings, if they are reconcilable with each other under any supposable state of facts, provable under the issues, without reference to the evidence actually adduced on the trial. *Stevens* v. *City of Logansport*, 76 Ind. 498; *Pittsburgh,*

etc.; *R. W. Co.* v. *Martin,* 82 Ind. 476; *Higgins* v. *Kendall,* 73 Ind. 522; *Louthain* v. *Miller,* 85 Ind. 161; *Amidon* v. *Gaff,* 24 Ind. 128.

The court will not presume anything in aid of the special findings, but will make every reasonable presumption in favor of the general verdict. *Pittsburgh, etc., R. W. Co.* v. *Martin, supra.*

When, however, they can not be thus reconciled, the special findings must prevail. *Hartman* v. *Flaherty,* 80 Ind. 472; *Lake Shore, etc., R. W. Co.* v. *McCormick,* 74 Ind. 440; *Fleetwood* v. *Dorsey Machine Co.,* 95 Ind. 491; *Chicago, etc., R. W. Co.* v. *Hedges,* 118 Ind. 5; *Frank* v. *Grimes, supra.*

To justify a recovery by the appellant, he was required to show that he sustained the injury complained of by the negligence of the appellee, and that he was himself free from negligence which contributed to the injury. The alleged inconsistency between the general verdict and the answers to interrogatories is, that the latter show contributory negligence. If this is true, the judgment of the circuit court was right, as contributory negligence on his part would be an absolute bar to a recovery, and if, as alleged, contributory negligence was shown by the special findings, there was such irreconcilable conflict as made it the duty of the court to disregard the general verdict and render judgment in favor of the appellee.

It is averred in the complaint that the " Vandalia " road was built after that of the appellee, and that the former company was required to maintain and keep in repair the tracks of both roads at the crossing; that on the morning in question the appellant and Sullivan were ordered by their section boss to make some needed repairs on the appellee's main track at the crossing, by tightening some bolts which had become loose ; that while they were engaged in doing so, some of the appellee's servants were engaged in moving a locomotive and some freight cars on a side-track about eight feet south of where they were at work, thus making a great deal of noise ;

that to get out of the way of the freight their section boss was compelled to run his hand-car to a point where he was separated from them by the moving freight train, and that while they were bending down, engaged in tightening the bolts, other employees, with a locomotive and a baggage car, moved without noise, signal or warning upon the main track, and pushed the baggage car against and over them, killing Sullivan and injuring the appellant. The engine and baggage car belonged to an accommodation train which was run daily from Plymouth to Fort Wayne and back, and when the accident occurred it was running backward toward the east to reach a water plug for the purpose of taking water. The appellant and Sullivan were facing east, or northeast, and the engine and baggage car approached them from behind.

No question is made in the argument over the negligence of the appellee's servants, and the case, as it is presented to us must be considered on the assumption that the appellant's injuries were caused by their actionable negligence. The only question for us to consider is, do the special findings show contributory negligence on the part of the appellant?

The only interrogatories and answers bearing on the question of contributory negligence are as follows:

Of those submitted by the appellant:

" 10. Did not the plaintiff look along the main track of the defendant's railway, both east and west of the crossing, before he commenced work at the crossing on the morning he was injured, and did he not thus learn that the main track was clear so far as he could see, both east and west of the crossing? Ans. Yes."

Of those submitted by the appellee:

" 5. Had not Shoner been at work on said crossing only about three or four minutes before he was injured? Ans. In our opinion five or six minutes." .

" 7. Does not the track of the defendant run east and west through the city of Plymouth? Ans. Yes."

"10. Is not the defendant's track straight, and in full view to one standing on the crossing where Shoner was hurt, for a mile or more west of said crossing? Ans. Yes.

" 11. Was not the engine and baggage car that struck Shoner moving east on defendant's main track? Ans. Yes.

" 12. Was not the engine and baggage car that struck Shoner, at and immediately before the collision, running at the rate of about two to four miles an hour? Ans. Yes."

" 14. Could not Shoner, by looking west along defendant's main track, have seen the engine and car approaching for a distance of 700 to 800 feet from the crossing where he was hurt? Ans. Yes.

" 15. Could not Shoner, by looking west along defendant's main track, have seen the engine and car approaching that struck him in ample time to have gotten out of the way and have avoided the injury? Ans. Yes.

" 16. After Shoner had commenced working on the crossing, did he look west for the approaching car at all? Ans. No."

It is also shown by other answers that the appellant had worked on the same section for three years, and had for years resided within three blocks of the crossing, and that the accommodation train to which the engine and baggage car belonged had been run at the same time for several months prior to the time the appellant was injured.

The appellee insists that upon these facts the court must say as matter of law that the appellant was guilty of contributory negligence ; that it must be assumed that the length of time the appellant had worked on the section, and had resided in that immediate vicinity, had made him familiar with the times of running trains on that part of the road ; that the place where he was required to work on the main track of the road necessarily exposed him to such dangers as required him to exercise active vigilance for his own protection ; and that, under the circumstances, his failure to look after he commenced work was *per se* negligent.

In cases involving questions of negligence, the rule is now settled that, where the facts are undisputed, and the inferences which may be drawn from them are not equivocal, and can lead to but one conclusion, the court will adjudge as matter of law that there is, or is not, negligence. While in cases where the facts are disputed, or where they are equivocal, and different inferences can reasonably be drawn from them, the question of negligence must be determined by the jury under proper instructions. *Baltimore., etc., R. R. Co.* v. *Walborn,* 127 Ind. 142 ; *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138, and authorities cited in each. See, also, *Rogers* v. *Leyden,* 127 Ind. 50, where a full citation of authorities will be found.

The general verdict in appellant's favor necessarily involved a finding that he was free from contributory negligence. Bearing in mind the rule that every reasonable presumption will be indulged in favor of the general verdict, and that the antagonism between it and the special findings must be so great that it can not be removed by any evidence legitimately admissible under the issues, can it be said that the facts specially found are unequivocal, and that no inference but that of negligence can be drawn from them ?

When a traveller approaches a railroad with the intention of crossing it, he is bound to know that to attempt to cross near and in front of a moving train involves more or less of danger. If he is so heedless of his personal safety that he braves the danger, or so careless that he does not use the senses nature has given him to look and listen, that he may learn if there is danger, only one inference, that of negligence, can be drawn from his conduct.

But the conduct of the appellant must be measured by a different standard. He was on the road rightfully, and in the discharge of duty, and while he was not absolved from the necessity of being vigilant, and careful to avoid danger, he had a right to rely, also, to some extent, on the care and

vigilance of others engaged in using the same road. Those who are engaged in the active work of operating a railroad, or anything else involving danger to the operatives, are not only required to be watchful and vigilant to conserve their own safety, but owe a similar duty to all others whose duties expose them to the same dangers; and they have, at the same time, a right to rely, to some extent, on the care of each other, and to assume that each one thus employed will use reasonable care to avoid injuring the others. *Pennsylvania Co.* v. *O'Shaughnessy*, 122 Ind. 588.

The work the appellant was doing was on the crossing of the two roads. The law makes it a felony for any engineer of any railroad,over which passengers are transported,to run his locomotive over such a crossing without first bringing his locomotive to a full stop, and ascertaining that there is no other train, or locomotive, approaching, and about to pass upon and over such crossing. Section 2172, R. S. 1881. The appellant would be justified in assuming that any engineer approaching the place where he was working would obey this express mandate of the law, and that his presence would thereby be disclosed, and pains taken to avoid injuring him.

While this would not absolve him from the necessity of using reasonable care, proportioned to the dangers incident to his work, and the place where he was working, it is, of course, apparent that the rule applicable to the traveller on the highway, approaching a railroad crossing, can not be applied to him. His duty requires him to give attention to his work. Can the court say, as matter of law, how often he should turn from his work to look for approaching trains? He looked when he commenced work, and saw that the track was clear. He then worked for five or six minutes without again looking, and was hurt. Can the court say, under such circumstances, that the inference of contributory negligence is conclusive, and sufficient to overthrow the general verdict? We think not. The fact that the appellant had worked on that same section, and had resided in the imme-

diate vicinity for three years, only strengthens the conclusion we have reached.   In the absence of any showing to the contrary, it will be presumed that during those years the employees of the appellee, working at that point, had been observant of the duty of reciprocal care for the safety of each other, which the law imposes on them, and had also obeyed the law requiring the stopping of trains, and observation of the track before attempting to run over the crossing.   If so, his knowledge thus acquired would indicate that the safest place for a workman, on the line of the track, would be the crossing, as he would there be reasonably certain to be seen and warned in time to escape danger.

The following are among the authorities which, in some measure, sustain the conclusion we have reached.   *McMarshall* v. *Chicago, etc., R. W. Co.*, 80 Iowa, 757 ; *Chicago, etc., R. W. Co.* v. *Dunleavy*, 129 Ill. 132 ; *Goodfellow* v. *Boston, etc., R. R. Co.*, 106 Mass. 461 ; *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261 ; *Stevens* v. *City of Logansport, supra.*

The court erred in sustaining the appellee's motion for a judgment on the special findings, notwithstanding the general verdict.

The judgment is reversed, with instructions to the Fulton Circuit Court to grant a new trial.

Filed Oct. 8, 1891.

### ON PETITION FOR A REHEARING.

MCBRIDE, J.—The appellee has asked for a rehearing. Reconsideration of the case only confirms us in the correctness of the conclusion reached.   The petition for a rehearing is therefore overruled.   The appellant asks for a change of the mandate, and that, instead of ordering a new trial, the court direct the Fulton Circuit Court to render judgment in appellant's favor on the general verdict.

While it is possible that by such an order no injustice would be done, and that substantial justice *would* be done, the possibility of injustice as the result of such a mandate is

too great to justify the court in making it. We are not able to say from the record that there may not have been errors on the trial against the appellee which, if presented by a motion for a new trial, would have compelled a reversal.

When the court below sustained the motion for a judgment in the appellee's favor on the answers to interrogatories, notwithstanding the general verdict, there was no longer reason or ground for a motion by it for a new trial.

As matter of course, also, there was no reason for bringing into the record by bills of exception any errors which may have been committed on the trial, and of which the appellee could only avail itself by a motion for a new trial and by bills of exception. Rules of practice must be general, and should be framed with a view to insuring, so far as possible, just results in all cases, and minimizing the danger of injustice being done to parties in any case.

It is true that in the record, as it comes to us, we find nothing to indicate that the trial was not fair, and that a correct result was not reached •by the general verdict. Nor do we find any thing to indicate that there was any error against the appellee. We can not, however, close our eyes to the fact that with the sustaining of the motion for a judgment *non obstante* the proceedings closed, and that the appellee could not thereafter file its motion for a new trial, and thus bring possible errors into the record.

Section 660, R. S. 1881, provides that " When the judgment is reversed, in whole or in part, the Supreme Court shall remand the cause to the court below, with instructions for a new trial, when the justice of the case requires it."

In Buskirk Practice (p. 334), it is said that "A cause is never remanded with particular instructions relative to the judgment to be rendered, unless all the facts necessary to a complete and final determination of the cause are in the record." See, also, Works Pl. and Prac., section 1106. That can not be said in a cause terminating as this did. If .the

motion for a judgment *non obstante* had been overruled, it would be different.

Petition to change mandate overruled.

Filed Jan. 9, 1892.