SAINT LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* JACKSON.

Opinion delivered March 3, 1906.

1. INSTRUCTIONS—GENERALITY.—One is not in position to complain of the generality of the court's charge to the jury if he failed to ask for proper instructions of a more specific nature.     (Page 105.)

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Where a servant is engaged in performing service for the master under circumstances which justify him in assuming that ordinary care will be observed to warn him of approaching danger, he is required to exercise only such care and vigilance in discovering peril and avoiding injury as is consistent with the performance of the work in which he is engaged. (Page 106.)

3. SAME—WHEN QUESTION OF CONTRIBUTORY NEGLIGENCE FOR JURY.—Where a track repairer was killed by an approaching train while he was engaged with his back to the train in tamping gravel under the ties, there being evidence that it was customary for signals to be given to laborers on the track of the approach of trains, the court could not say, as a matter of law, that deceased was guilty of negligence, but properly left it to the jury to determine from all the circumstances whether he was in the exercise of due care.   (Page 106.)

4. SAME—NEGLIGENCE OF MASTER—FAILURE TO KEEP LOOKOUT.—Under the general rule that a master must exercise ordinary care to furnish the servant a safe place in which to work and to protect him from danger, it was properly left for the jury to say whether a railroad company was negligent in pushing a train of cars on to the track where deceased and other laborers were at work without having a flagman in front to keep a lookout and give signals of danger. (Page 109.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

STATEMENT BY THE COURT.

This is an action brought by John E. Jackson, as administrator of the estate of Sam Jackson, deceased, to recover damages for the alleged negligent killing of plaintiff's intestate. Deceased was employed by the company as a laborer doing track and grade work, and while at his work was run over by a train of empty cars pushed by an engine. From the injury sustained it is alleged that he suffered great pain and died in about two hours thereafter. Negligence of the servants of defendant is alleged in failing to give warning, by bell or whistle, of the approach of the train, and by failing to station a flagman or watchman on the end of the train to warn the men at work on the track of the approach of the train.

The defendant answered, denying all the charges of negligence of its servants and alleging contributory negligence on the part of the deceased.

The injury occurred on November 16, 1903, near Mulberry Station, in Franklin County, where the defendant company was engaged in reconstructing its line of road and lowering the grade line. A steam shovel was operated at the place in cutting through a hill. The track on which the steam shovel was being operated had become soft and muddy from recent rains, and a large number of laborers (including deceased) were engaged in putting in gravel and sand under the ties to support the track.

Two locomotives were engaged at the place, one in hauling out the cars which had been loaded with dirt by the shovel, and the other in setting in the empty cars to be loaded, and in moving them forward as they were loaded. One engine had pulled out a long string of loaded cars, and backed them down upon a passing track, when the other engine pushed a line of empty cars upon the track where deceased and the other laborers were at work. The speed of the train was variously estimated by the witnesses at from twelve to twenty-five miles per hour. Deceased and three other men were engaged, two and two facing each other, in putting gravel and sand under a cross tie, deceased having his back to the approaching train when he was run over. Three of the men were killed, and the survivor was injured. The right arm of deceased was cut off, his cheek bone and breast bone crushed,

all the ribs on his left side broken and a hole punched in his back. He was placed in a car immediately, and taken to Mulberry, where he expired about the time the car arrived.

The survivor of the three men at work with deceased testified at the trial, and gave a detailed account of the occurrence. He said that the four men were at the time stooping over, tamping gravel and sand under the cross tie, were engaged in talking, and did not pay any attention to the approach of the train; that the train did not make much noise as it approached. He testified that he heard no signal or warning of the approach of the train, and saw no one on the end of the train. On cross-examination he was asked whether or not the men were engaged in conversation, and replied: "I do not recollect; could not tell you positively; expect maybe we were; we were always talking; I never worked in a gang in my life that were not always talking and laughing." The following question was asked him and answer returned: Q. "State to the jury if in tamping ties it does not require all your time and attention to look after that?" A. "It requires a whole lot of time and attention to look after that." He further stated that it was customary, when the engine was moving cars, to give signals by ringing the bell, and to keep a man posted on the end of the train.

Other evidence tended to show that no signal was given by bell or whistle, and no lookout kept from the front end of the train. There was also evidence tending to show that the foreman gave instructions to the men generally to keep out of the way of trains.

The following rule of the company was introduced in evidence, viz.: "When cars are pushed by an engine (except when shifting and making up trains in yards), a flagman must take a conspicuous position on the front of the leading car and signal the engineman in case of need."

There was evidence to the effect that orders were issued daily for the two engines operated at that place to work between the stations, Dyer and Mulberry, as working limits, and that yard rules were considered as applicable between these limits.

The court, of its own motion, gave to the jury the following, which were all the instructions given:

"1. The defendant owed to the plaintiff's intestate the duty

to use ordinary care and prudence, considering the perils, dangers and necessities of the situation, to provide a reasonably safe place for plaintiff's intestate to carry on his work, but was not an insurer of his safety. Ordinary care is that care that an ordinarily prudent and careful man would have used under the circumstances given in proof. If the defendant used such care, then it is not liable in this action. If it failed to use such care to provide such a place to work, and by reason of such failure conscious suffering of plaintiff's intestate proximately resulted, then you will find for the plaintiff, unless it should appear also that plaintiff's intestate was lacking in such care for his own safety as an ordinarily prudent and careful person under all the circumstances would have exercised, in which case you should find for the defendant.

"2. If you find for the plaintiff, you will assess the damages at such a sum, not exceeding the amount claimed in the complaint, as from the evidence you may believe to be fair compensation for such conscious suffering, if such conscious suffering is shown by the proof.

"3. Contributory negligence is such a want of care on the part of plaintiff's intestate for his own safety as an ordinarily prudent and careful person would have exercised under all the circumstances, and which caused or contributed to the injury sued for in this action. The burden of showing contributory negligence is on the defendant, unless it sufficiently appears from the evidence submitted on the part of the plaintiff.

"4. Plaintiff's intestate was required to use his own senses, and to take notice of those things which an ordinarily careful and prudent person, situated as he was, would have observed, by a proper use of his senses in connection with his duties as an employee of defendant, pursuing his labor in defendant's behalf; and in this case if you find from a preponderance of the evidence that plaintiff's intestate did not do so, plaintiff can not recover. But if such is not shown, then plaintiff is not barred from a recovery on the ground of contributory negligence of his intestate.

"5.. If plaintiff's intestate was absorbed in the performance of the duties of his employment, and was thus oblivious to danger, and did not see and did not hear the train approaching him, and if a man of ordinary prudence and care for his own safety, situated as plaintiff's intestate was, would have been so absorbed, so

oblivious to his surroundings, and would not have seen and would not have heard the train approaching, then plaintiff's intestate was not guilty of contributory negligence which would bar a recovery in this case.

"6. The burden of proving a want of ordinary care on the part of defendant to provide a reasonably safe place for plaintiff's intestate to work is on the plaintiff, and this must appear from a preponderance of the evidence to authorize a recovery. And the burden is on the defendant to show by a preponderance of the evidence contributory negligence which will defeat a recovery, unless such contributory negligence appears from a preponderance of the evidence submitted by the plaintiff; and if contributory negligence appears from the proof on either side, you will find for the defendant, although you may also find that defendant was guilty of negligence."

The jury returned a verdict in favor of plaintiff, assessing damages in the sum of $500, and the defendant appealed.

*Oscar L. Miles,* for appellant.

The case should be reversed and dismissed because (1) the records show that the company was not guilty of negligence; (2) that deceased was guilty of contributory negligence, and (3) that there was no conscious suffering on the part of deceased after he received the injury. Further, the case should be reversed and remanded because the court erred in giving its instruction numbered 5, and in refusing to give instructions numbered 1, 2, 3, 4, 5 and 6 asked by by defendant, and in refusing generally to submit defendant's theory of the case to the jury.

*Sam R. Chew,* for appellee.

1. It is the master's duty to provide the servant with a reasonably safe place in which to work, and to exercise ordinary care and caution to maintain it in a reasonably and ordinarily safe condition.

2. Though the master is not an insurer of the safety of his servant, he must exercise ordinary care, diligence and caution to see that the place where the servant is required to work is kept in an ordinarily and reasonably safe condition.

3. The servant is required to exercise ordinary care and

caution for his own safety; and if a failure therein proximately caused the injury, this is a contributory negligence on his part, and he can not recover.

4. If, through the negligence of the master, the servant is injured and dies, having suffered conscious mental and physical pain, the cause of action survives to his administrator. Bailey on Masters' Liability to Servants, 2 *et seq*; 1 Shear. & Red. on Neg. § 189; 53 Ark. 117; 35 Ark. 602; 44 Ark. 524; 48 Ark. 333; 46 Ark. 555; 18 S. W. 172; 48 Ark. 174; 68 Ark. 1.

5. ·Deceased, being where his work required him to be, had the right to proceed with his work and rely upon those in charge of approaching trains to give him timely warning. 2 Thompson on Neg. § 1756; 5 L. R. A. 786; 18 Am. & Eng. R. Cas. 56; 130 Ind. 170; 80 Iowa, 757; 64 S. W. 1.

McCULLOCH, J., (after stating the facts.)   1. It is urged by counsel, apparently with much confidence, that the charge of the court was too general, and failed to direct the attention of the jury specifically to the issues involved.   We do not agree with him; but, conceding the correctness of this contention, still appellant is in no position to complain unless proper instructions were asked of a more specific nature. *McGee* v. *Smitherman,* 69 Ark. 632; *Fordyce* v. *Jackson,* 56 Ark. 594.   As will be hereafter seen, the instructions asked by appellant were not correct declarations of the law.´ In *St. Louis & San Francisco R. Co.* v. *Crabtree,* 69 Ark. 134, this court said that "each party has the right to have the jury instructed upon the law of the case clearly and pointedly, so as to leave no ground for misapprehension or mistake;" but in that case a specific instruction was asked by the appellant, and this court held that it was error "for the trial judge to refuse to give a specific instruction correctly and clearly applying the law to the facts in the case, even though the law is in a general way covered by the charge given."

2. Error of the court is assigned in giving the fifth instruction, and also in refusing to give the following instructions asked by appellant:

"(1)   If you find from the evidence in this case that the foreman of·the 'track gang,' in which deceased was working, had instructed all his men to watch out for trains moving over the

tracks on which they were working, to the end that such track hands might not be injured by such movement of trains, that deceased at the moment when he was struck and injured was not paying any attention to the movement of the train, which was in plain view and approaching on the track on which he was working, if you find it was in plain view and approaching, you will find for the defendant.

. "(2)  If you find from the evidence that the deceased, by looking or listening for the approach of the train which struck and injured him, could have seen or heard such train and avoided being injured by it, you will find for the defendant."

The third instruction asked by appellant was in general terms on the subject of contributory negligence, and was fully covered by the instructions given by the court on that subject.

The fifth instruction given by the court must be considered in connection with the fourth, which was also given, wherein the jury was told that "plaintiff's intestate was required to use his own senses, and to take notice of those things which an ordinarily careful and prudent person situated as he was would have observed, by a proper use of his senses, in connection with his duties as an employee of defendant, pursuing his labor in defendant's behalf." Taking the two instructions together, they told the jury, in effect, that deceased was bound to exercise ordinary care to discover the peril and avoid injury, and in doing so he must make such use of his senses as was reasonably consistent with the performance of his duty to his employer. Is this a correct declaration of the law, or can it be said, as a matter of law, that deceased was guilty of contributory negligence because he failed to constantly look and listen for the approach of a train?

Mr. Labatt, in summing up the effect of the decisions on the subject of the degree of care for his own safety due by a servant in performing the master's work, says: "Where the servant failed to take such precautions as were appropriate for the purpose of protecting himself at the moment when the accident occurred, evidence that such failure was due to the fact that his attention was engrossed by his duties is always competent for the purpose of rebutting the inference of contributory negligence which might otherwise be drawn from his conduct; and if such evidence is offered, a court is very seldom justified in declaring

him to have been, as a matter of law, wanting in proper care.
* * * Whenever the facts in evidence are such that the ser-
vant's temporary forgetfulness of the conditions may possibly be
an excuse for conduct which would otherwise be culpable, the
jury should receive appropriate instructions upon the subject."
1 Labatt on Master & Servant, § 350.

It is true the same author says that this doctrine applies only
when "the circumstances were either such as to create a situ-
ation approaching to or constituting an emergency, or such as to
exhibit the servant in the light of a person who was discharging
a duty which demanded an unusual amount of attention," and not
"where he was merely discharging, under normal conditions,
some ordinary function incident to his employment." 1 Labatt, §
351. But in the last-noted statement the author refers to a class
of cases where the servant, on account of forgetfulness or inad-
vertence, negligently places himself in a position of danger, and
not where, by reason of his absorption in his work, he becomes
oblivious of a dangerous condition created by the negligent act
of the master or his servants whose duty it is to give notice of
danger.

Mr. Thompson, in his treatise on Negligence (vol. 2, § 1756)
in discussing the duty of track repairers, track walkers and like
employees of railroad companies, says: "As a general rule, it
is not contributory negligence, as a matter of law, for a person so
employed not to be on a constant lookout for approaching trains.
This must be so if we are to pay the slightest attention to the
position of a man who is fastening a fish-plate, or who is oiling
or repairing the wheel of a car in a passenger train which has
stopped temporarily at a station for that purpose. Such a person
can not keep his eyes on his work and at the same time keep them
strained in both directions for approaching trains or for ocular
signals. Such persons are, therefore, not blameworthy, as a
matter of law, merely because they become so engrossed in their
work as not to heed the approach of a train, or because they rely
upon the reasonable expectation that the railway company will,
through its trainmen, perform the duty of giving them the neces-
sary and proper signals. But it does not follow from these con-
siderations that contributory negligence will be wholly excused,
even in persons so engaged." This statement of the law is well

supported by adjudged cases. *Goodfellow* v. *Boston, etc., R. Co.,* 106 Mass. 461; *Ferren* v. *Old Colony R. Co.,* 143 Mass. 197; *Austin* v. *Fitchburg R. Co.,* 172 Mass. 484; *Northern Pac. R. Co.* v. *Everett,* 152 U. S. 107; *Bluedorn* v. *Mo. Pac. Ry. Co.,* 108 Mo. 439; *Houston & T. C. R. Co.* v. *Smith* (Tex.), 51 S. W. 506; *Tobey* v. *Burlington, C. R. & N. R. Co.,* 94 Iowa, 256; *Shoner* v. *Penn. Ry. Co.,* 130 Ind. 170.

The doctrine stated is recognized by this court, in a somewhat different application, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Higgins,* 53 Ark. 458, where the court said that, in determining whether an employee "has failed to exercise due care in exposing himself to danger, it is always necessary to take into consideration the exigencies and circumstances under which he acted. If the service which he undertook to perform was required by a repairer, and was such as to demand his exclusive attention, and that he should act with rapidity and promptness, it would be unreasonable to require of him that care, thought and scrutiny which might be exacted when there is time for observation and deliberation."

While the application of the doctrine is different in that case, it serves to illustrate the true rule that where the servant is engaged in performing service for the master under circumstances which justify him in assuming that ordinary care will be observed to warn him of approaching danger, he is required to exercise only such care and vigilance in discovering peril and avoiding injury as is consistent with the performance of the work in which he is engaged. Any other rule would place the servant while performing work for the master in the same category as a trespasser upon the premises of the master.

In *Bauer* v. *St. Louis, I. M. & So. Ry. Co.,* 46 Ark. 388, where a car inspector was injured while crossing from one track to another (not being engaged at the moment in the performance of a duty requiring his attention) was run over and killed by a passing train, this court held that he was guilty of contributory negligence, and in the opinion the court quoted with approval the language of Judge Shiras in *Holland* v. *C., M. & St. P. Ry. Co.,* 18 Fed. 243, that "the rule is still recognized by the courts that the employee is not relieved from exercising the care which he should exercise considering the work in which he is engaged."

Now, in the case at bar there was affirmative evidence to the effect that the work of tamping gravel under the ties required some care and attention, and that plaintiff's intestate was stooping over, engaged in this work with his back to the approaching train. It was also shown that it was customary for signals to be given by bell and whistle to laborers at work on the track, and to keep a flagman posted on the front end of moving trains. Under this state of the proof it was not proper for the court to instruct the jury that it was the duty of the servant to constantly look and listen for the approach of trains.

The two instructions given by the court properly, we think, submitted the question of due care of deceased. It was properly a question for the jury to say from all the circumstances whether or not deceased was guilty of contributory negligence. The court could not say as a matter of law that he was guilty of negligence because he failed to discover the approaching train in time to step off the track and avoid the injury.

The Supreme Court of Indiana, in *Shoner* v. *Penn. Ry. Co., supra,* the same being a suit for damages where a section hand was run over at a crossing, after speaking of the duty of the engineer to give signals of the approach of the train, said: "While this would not absolve him (the section hand who was injured) from the necessity of using reasonable care, proportioned to the dangers incident to his work and the place where he was working, it is, of course, apparent that the rule applicable to the traveler on the highway approaching a railroad crossing can not be applied to him. His duty requires him to give attention to his work. Can the court say, as a matter of law, how often he should turn from his work to look for approaching trains? He looked when he commenced work, and saw the track was clear. He then worked five or six minutes without looking, and was hurt. Can the court say, under such circumstances, that the inference of contributory negligence is conclusive and sufficient to overthrow the general verdict? We think not."

3. It is insisted that the cause should be reversed because of the refusal of the court to give the following instruction:

"4. If you find from the evidence in this case that at the time deceased was struck and injured the point on the tracks where he was injured was by the defendant thrown or created into

a working district which was under the regulations of the yards of the defendant where trains are shifted and made up, that, under the regulations applicable to such yards, it is not necessary to have a man on the front car of a train backing by the engine shoving from the rear, then it was not necessary to have a man on the rear car of the train which struck and injured the deceased, and negligence can not be predicated upon the absence of such person from such position."

This instruction was properly refused because it told the jury that, as a matter of law, the company owed no duty to its employees at work on the track to keep a flagman posted on the end of moving trains to warn them of approaching danger. The train of cars which ran over deceased was being pushed onto the track by the engine in order to put them into position to be filled with dirt from the steam shovel, and, even if it can be said that the engine was then engaged in "shifting and making up trains in yards," within the meaning of the exception to rule number 102, still this does not operate as an exemption from all duty to post a flagman on the end of moving trains in order to warn laborers on the track, if ordinary care requires that to be done. No rule of the company was proved exempting it from such duty, and, under the well-established doctrine that the master must exercise ordinary care to furnish the servant a safe place in which to work and to protect him from danger, it was for the jury to say whether this duty was performed when a train of cars was pushed on to the track where laborers were at work, without having a flagman on the front end to keep a lookout and give signals of danger.

4. Counsel contends that there was no proof of conscious suffering on the part of the deceased, and that, under the rule announced in *St. Louis, I. M. & S. Ry. Co.* v. *Dawson,* 68 Ark. 1, that the burden is upon the plaintiff to show affirmatively that such suffering was endured, the case must be reversed. Without setting out the evidence on this point, we deem it sufficient to say that we find ample proof of conscious suffering, and that the jury were justified in arriving at the conclusion recorded in their verdict.

We find no error, and the judgment is affirmed.