Argued January 3, decided February 7, 1911.

# SMITH v. SOUTHERN PACIFIC CO.

[113 Pac. 41.]

MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—TRACKMEN —LOOKING FOR APPROACHING TRAINS—DEGREE OF CARE.

1. Where a railroad trackman is working on the track which is being used for the passage of trains, it cannot be determined as a matter of law how often he is required to look in order to fulfill the duty of ordinary care; that being a question for the jury.

EVIDENCE—NEGATIVE TESTIMONY—WEIGHT.

2. Evidence that a witness was near the point of an accident at the time plaintiff was struck and injured by an approaching locomotive, and did not hear the whistle or bell, tends in a measure to show that the whistle was not sounded or the bell rung.

MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—DUTY OF ENGINEER.

3. It is the duty of a railroad engineer to closely observe men working on the track, and the moment he has reason to believe that one of them is not going to get out of the way in time to avoid danger to promptly use the appliances at his command to check or stop the engine so as to avoid injury.

MASTER AND SERVANT—INJURIES TO SERVANT—RAILROAD TRACK—CARE REQUIRED.

4. Where a railroad trackman was engaged in repairing the track under such circumstances as would justify him in assuming that ordinary care would be observed to warn him of approaching danger, he was only required to exercise such care and vigilance in discovering the peril and avoiding injury as was consistent with the performance of the work in which he was engaged.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DISCOVERED PERIL.

5. Where plaintiff negligently assumed a position of danger in some degree, which so contributed to his injury as to leave him without right of recovery for defendant's primary negligence, plaintiff could nevertheless recover if the person causing the injury became aware of plaintiff's peril in time to avoid injuring him by the proper use of all the means at his command, and listlessly, inadvertently, or negligently failed to resort to such means, provided plaintiff was himself free from negligence after he became conscious of his danger.

MASTER AND SERVANT — INJURIES TO SERVANT — CONTRIBUTORY NEGLI-GENCE.

6. Plaintiff, a railroad trackman, working in a snowstorm, was engaged in taking the nuts off an angle plate on a rail near where it connected with and about a foot from the track on which an engine approached in defendant's railroad yards, and struck and injured him. Plaintiff testified that at the time of his injury he was trying to turn off the nut of a bolt that turned, and that it required both his hands on the wrench and one foot to hold the bolt. There was 'evidence that the train

approached without bell or signal at from 20 to 30 miles an hour. Plaintiff also testified that there were other men working between him and the engine, and that he had not been there not more than five minutes, during which he looked up and saw no engine coming, that he heard a noise, and just as he raised up he was struck. *Held*, that plaintiff was not negligent as a matter of law, in that he was not constantly on the lookout for approaching trains.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Lewis N. Smith against the Southern Pacific Co., a corporation, to recover damages for an alleged injury caused by defendant's negligence. Upon the trial the court directed a verdict in favor of defendant, and entered a judgment thereon, from which plaintiff appeals.

Plaintiff, in his complaint, alleged that defendant, by its engineer, carelessly and negligently ran its switch engine against plaintiff, as he was at work on the track, and without fault or negligence on the part of plaintiff; that the engineer saw that the collision was imminent, and could have avoided the same, but carelessly and negligently failed to stop the locomotive, and thereby avoid the collision. In its answer defendant denied the allegations of negligence set forth in the complaint, and affirmatively pleaded the defenses of contributory negligence and assumption of risk. The affirmative matter of the answer was put in issue by plaintiff's reply. At the time of the accident, January 19, 1906, the plaintiff, Lewis N. Smith, had been employed about a month by the defendant company as a section hand, being engaged under the direction of the section foreman in taking the nuts off an angle plate on the rail near where it connected with, and about a foot from, the track on which the engine came, in the railroad yards, at the crossing of Mosher Street in Roseburg, Oregon. It was snowing at the time very hard. Plaintiff, in substance, testified:

"I had just got the wrench, and was taking the nuts off an angle plate on the rail, and there was one bolt

that turned, and I got down on one knee and put the other foot up against the bolt to hold it from turning in the angle bar. I was stooping over, facing towards the south, with my wrench on the outside, and I heard a noise of some kind, and just raised up and I was struck, was all the warning I had. The first warning I heard was the time I started to raise up. I did not have time to get up.

"Q. What length of time transpired between the time you heard that warning and the time that you were struck?

"A. Just as quick as I could move, because I was afraid all the time I was there that I was going to get hurt. The rest of the men, some six, were north of me, between me and the engine, and I thought if an engine came and they could get out of the way I could. After they got me up and I kind of came to, I said I wanted to see what it was, and, as I turned around, the switch engine was standing at the water tank, 200 feet from where I was struck."

He further testified that he was injured, and on cross-examination said:

"I did not see the engine coming down the track. There was no obstruction to my view unless it was the other men working around there, taking out ties.

"Q. Do you mean to say that those men there would prevent you from seeing this?

"A. They would unless I straightened up. Yes, clear up.

"Q. Did you hear the whistle blow at all?

"A. I heard some noise as I rose up.

"Q. What was the noise like?

"A. I can't tell you. I did not have time to distinguish.

"Q. Did you hear anybody call?

"A. No, sir.

"Q. Did you look up the track to see whether the engine was coming or not?

"A. Well, I had not been to work there but just a little bit. I had just got the wrench.

"Q. How long had you been in the stooping position?

"A. Not over five minutes.

"Q. During that time did you look up the track at all to see if the engine was coming?

"A. Yes, sir.

"Q. Did you see the engine?

"A. No, sir; not from that direction.

"Q. What time was it that you looked up with reference to the time that you were struck?

"A. It was not but just a short time before.

"Q. If you had looked before the engine came down the track, you could have seen it, could you not?

"A. I suppose I could.

"Q. How far was the nearest man to you?

"A. Four or five feet, I suppose.

"Q. Where were the rest of them?

"A. They were all at work there on the track north of me, * * as I remember they were working on the cross-street, taking the ties out of the cross-street.

"Q. Did you see any flag out of any sort?

"A. There was no flag on that track. There was a flag out to protect the trains on the track that we were taking up, not on the other tracks.

"Q. Not on the track that the engine was on?

"A. No, sir.

"Q. If you did not know whether there was a flag out on this other track, why did not you look out and see the engine coming?

"A. Because the other men were working there, and I thought that if an engine came and they could get out of the way I could.

"Q. Were you expecting them to call to you?

"A. No, sir; I was watching the men.

"Q. You were undertaking to look out for yourself?

"A. I was undertaking to look out for myself the same as they were.

"Q. You did not hear the engine except at the moment of the collision?

"A. No, sir.

"Q. Were you listening for it?

"A. I was listening for it. I was on guard all the time."

F. L. Beard, engineer, in detailing the circumstances of the accident, testified, in substance, that he saw the plaintiff on the track some 90 or 100 feet distant, it might have been a little further, before he reached him; that he could have stopped the engine, or closed down so as to have avoided the accident, had he thought it necessary or reasonable to suppose the man would not get out of the way.

"As the facts developed later, had I known then at the start I could have stopped."

And on cross-examination:

"I could see the sectionmen from the time I left opposite the passenger depot. I was on the main track, going south. * * The bell was rung continuously and had been since we left from where we were at the lower portion of the yard, and, on arrival within 90 or 100 feet or such matter of where the men were working, I sounded a succession of short blasts of the whistle. * * The speed of the engine was about six miles an hour. * * I had the engine gradually under control, by that I mean gradually steadying down so as to take the benefit of the doubt in case I had to stop. I noticed the man working as though he was real busy and I began to slow the engine, gradually slowing down from a point 100 or 90 feet away from him, and I sounded the whistle continuously, and, when I reached a point within 30 or 50 feet away, it became apparent to me that he was not going to get out of the way, and I immediately applied the air and emergency.

"Q. If he had been standing in an erect position, would you not have hit him?

"A. I do not think it would. I could not see that Smith gave any heed when whistle sounded. I applied service brakes about 100 feet from him. Whistled six to ten times. Sounded whistle about 50 or 60 feet before I applied the emergency. He had his back toward us, looking quartering away from the engine.

"Q. Did you hear the angle bar strike the engine?

"A. I was too busy engaged getting the engine stopped. I made a test with the same engine once, going at a speed

of about seven miles per hour, and it took 62 feet to stop it. At the rate of ten miles per hour it would take about 80 feet to stop."

H. O. Heidenrich, another section hand, testified:

"That he was working about 10 or 15 feet from plaintiff at the time of the accident. That he did not see the engine strike him.

"Q. Did you see the engine when it was coming at that time?

"A. I see everybody run and I run too, so I could get out of the way.

"Q. How fast was the engine going?

"A. Oh, I don't know, about 20 miles or 30 miles an hour.

"Q. How close was the engine to you before you saw it?

"A. Oh, about 10 or 15 feet.

"Q. Did you hear the whistle blow?

"A. No, sir.

"Q. The whistle might have been blown. Were you scared?

"A. Yes; I was scared."

And on cross-examination:

"Q. Well, did you see Smith at all?

"A. No; I see two men take him away.

"Q. After the accident, you saw two men taking Smith away?

"A. Yes, sir.

"Q. You did not see him before the accident?

"A. No; I look out for myself.

"Q. Were there any men south of you?

"A. Yes; pretty near half jumped that way, and the other half the other way.

"Q. Now, when did you first see the engine?

"A. I see everybody run and then I run. I have no time to look around.

"Q. Your notice was called by the men getting away?

"A. Yes; I hear some of them.

"Q. Did you hear anybody yell?

"A. Yes; they say get out of the way, somebody. I don't know who it was.

"Q. Did you hear the bell of the engine ringing?

"A. No; I did not hear that.

"Q. Or the whistle?

"A. No, sir.

"Q. You do not remember about having heard that?

"A. No, sir.

"Q. You did not have very much time to see the engine, how fast it was going, did you?

"A. No. Yes, yes.

"Q. You think it was going how fast?

"A. About 20 miles an hour.

"Q. Where did it stop?

"A. Sixty or one hundred feet.

"Q. Did he put on the brakes?

"A. Yes.

"Q. And stopped within 50 or 100 feet from where you were?

"A. Yes, sir."

Redirect examination:

"Q. You don't know exactly how far it stopped, do you?

"A. No.

"Q. It might have run on a couple of hundred feet as far as you know?

"A. No; I can't tell exactly."

Defendant's seven witnesses all estimated the speed of the engine, at the time the emergency was applied, at about six miles per hour.

H. Faulkner, witness for defendant, testified that he was about 60 feet away from Smith; that Smith was kneeling down, taking off a pair of angle bars, stooping down with his back to the engine, kind of sideways. He did not know about the bell, but the whistle was sounding; that Smith raised up and the bumper beam of the switch engine caught him on the shoulder and knocked

him sidewise, straight out from the engine; that his report shows engine stopped 60 feet beyond where Smith was struck.

"When I first saw the engine, 90 feet from where Smith was, it was coming about 6 miles per hour. When it struck him, I do not know the speed. I did not pay any attention. I do not know whether it kept the same gait or not. He did not increase. I do not say he slackened. Bell rings at crossings."

Another witness, C. E. Matthews, fireman, testified that the speed of the engine at the time of the collision, or immediately thereafter, was 2 or 3 miles per hour, and before that 6 miles; that after the brakes were set it would run about 60 feet; that it passed beyond where plaintiff was struck some 35 or 40 feet, or about the length of the engine.

The motion for the directed verdict was based upon the grounds that the plaintiff had not proven a case sufficient to be submitted to the jury, particularly in that no negligence had been shown on the part of defendant, and on the further grounds that it appeared from the testimony that plaintiff had been guilty of contributory negligence, and his injury was a risk assumed by him. The court in passing upon the motion, among other things, stated:

"That the allegations upon which this cause is based is that the engineer saw the plaintiff and could have avoided the accident. * * And one of the acts required of the defendant would be to give warning by proper signals in order that the plaintiff engaged in his work might have the opportunity to get out of the way and protect himself. * * Now the defendant comes here and brings witnesses who testify, a number of them uncontradicted, as to the signals having been given, the whistling, and others there upon the track getting out of the way, and then evidence also as to the allegation in the complaint that the engineer saw this person at the time that he did, and shows affirmatively by the evidence that all the precaution that could be taken was taken after he saw him, and saw that he was not going to get out of the way."          REVERSED.

For appellant there was a brief and an oral argument by *Mr. Albert Abraham.*

For respondent there was a brief over the names of *Messrs. Coshow & Rice, Mr. Rufus A. Leiter* and *Mr. William D. Fenton,* with an oral argument by *Mr. Fenton.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. It is contended on behalf of plaintiff that the testimony tends to show that his injury was caused by the negligence of defendant and without fault on his part; that the evidence is conflicting in regard to the speed of the engine and the signals; that it is conclusively shown that the engineer was careless and reckless in running the engine against him, when for some distance he had seen him, and by the exercise of ordinary care could have stopped the engine and avoided the collision, and that the trial court erred in directing the jury to find a verdict for defendant.

Counsel for defendant contends that it was not guilty of negligence, and that it was the duty of plaintiff to look for the engine; that during the considerable period of time the engine was approaching from the depot he did not look up, and that he was guilty of contributory negligence; that the engineer did all in his power to avoid the injury. As we understand it, the trial court held that the plaintiff was guilty of contributory negligence for the reason that he failed to look. Plaintiff testified that he looked for the engine just as he went to work at the angle plate, and that he was stooping over at work only about five minutes before he was struck. It has been held that the court could not say as a matter of law how often one in a similar position to that of plaintiff should look, and that is a lar position to that of plaintiff should look, and that this is a question for the jury: *Shoner* v. *Pennsylvania Co.,* 130 Ind. 175 (29 N. E. 775) ; *Austin* v. *Fitchburg R. R.,* 172 Mass. 484 (52 N. E. 527) ; *Shulz* v. *Chicago, M. & St. P.,*

57 Minn. 271 (59 N. W. 192) ; *St. Louis, I. M. & S. R. Co.*
v. *Jackson,* 78 Ark. 100 (93 S. W. 746: 6 L. R. A. (N. S.)
646.)

"An employe is bound to use ordinary care to avoid the
dangers that arise, whether usually incident to the service
or not.  He is under the same obligation to provide for his
own safety from dangers of which he has notice or which
he might discover, by the use of ordinary care, that the
employer is to provide it for him."  1 White, Personal
Injuries on R. R. § 399.

In *Kunz* v. *Oregon R. & N. Co.,* 51 Or. 191, 205 (93
Pac. 141, 146), it was said by Mr. Chief Justice MOORE:

"If the facts thus supposed were true, and the engineer,
seeing the team standing on the track, under the circum-
stances mentioned, immediately used all available appli-
ances to stop the train, the question as to the measure of
such care would nevertheless be for the jury to deter-
mine."

And in *Palmer* v. *Portland R. L. & P. Co.,* 56 Or. 262
(108 Pac. 211, 213), it was held, Mr. Justice KING speak-
ing for the court:

"To test the sufficiency of the proof under a motion for
nonsuit, the testimony must be viewed in the light most
favorable to plaintiff. * * It also appears that had the
car been under proper control, and not going at an unrea-
sonable speed, it could have been stopped in time to pre-
vent a collision; thus supplementing the plaintiff's proof,
tending to establish as a question for the consideration of
the jury that defendant's negligence was the primary
cause of the accident [citations].  The burden of proving
contributory negligence is on the defendant [citation].
And, as held in *Eliff* v. *O. R. & N. Co.,* 53 Or. 66 (99 Pac.
76), where the proximate cause of the injury is problem-
atical, as certainly appears here, the case should be sub-
mitted to the jury."

Further, quoting from Mr. Justice LAMAR in *Grand
Trunk Ry. Co.* v. *Ives,* 144 U. S. 408 (12 Sup Ct. 679: 36
L. Ed. 485) :

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings ·and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

In the case of *Murran* v. *Chicago, M. & St. P. R. Co.*, 86 Minn. 470 (90 N. W. 1056), where a section man was at work in defendant's yard, cleaning out snow and ice, the foreman and other men being not far distant, snow falling and wind blowing, and where, for convenience in getting the snow and ice out from under a cross-bar which connected the two rails, he had turned his back to the east, and was struck by a single car, which had been thrown over the switch he was cleaning out, and the switchman in charge could easily have stopped the car before it reached plaintiff, but made no effort to do so, the court observed that plaintiff was at work in an exceedingly perilous place under peculiar and ·exceptional circumstances. The fact that snow was falling and blowing, and that he was stooped, engaged in work, with his back toward the approaching car, was all seen and understood by the man in charge of the switching, and a jury could well say that it should have been apparent to the switchman that plain-

tiff might not discover his peril in time to escape, and as a consequence that he was negligent in not taking active steps to prevent the injury, and that the question of defendant's negligence was for the jury.

2. If we take the evidence of Heidenrich in regard to the signals and the speed of the engine as correct, if the evidence is conflicting upon the material points, and reasonable men might draw different conclusions from the evidence, taking into consideration all the circumstances of the transaction as disclosed thereby, then they become ·questions for the jury under proper instructions. *Kunz* v. *Oregon R. & N. Co.,* 51 Or. 191, 205 (93 Pac 141, 146) ; *Palmer* v. *Portland R. L. & P. Co.,* 56 Or. 262 (108 Pac. 213.) Plaintiff states that he was engaged in his work at the time he was struck, and did not see the engine, nor hear the bell or whistle. The estimate of the speed of the engine at the time, as made by the witness Heidenrich, differs from the testimony of defendant's witnesses. From the circumstances as detailed by the witnesses, as to the manner in which the other men in the crew, at work near the plaintiff, got off the track, and the statement of the engineer that he did not hear the engine strike the angle bar or the wrench, "because he was too busy getting the engine stopped," which was at the very instant that plaintiff was struck, it might be inferred that the engineer did not apply the emergency brake or try to stop the engine until it was close to or practically upon the plaintiff, and that its speed was greater than estimated by some of defendant's witnesses. Heidenrich's testimony that he was near at the time, and did not hear the whistle or bell, coincides with that of plaintiff. This tends in a measure to show that the whistle was not sounded nor the bell rung. 1 Wigmore, Evidence, § 664. From the statement of Mr. H. Faulkner, a section foreman of experience, to the effect that he would not say that the engineer slackened

Sig. 2

the speed of the engine after the whistle was sounded, and from the estimated distance of 35 or 40 feet that the engine passed plaintiff, it may appear that, if the estimated distance of 60 feet required to stop the engine is assumed to be correct, the engineer did not attempt to stop the locomotive until within 20 or 25 feet of plaintiff.

3. A railroad company has been held liable where a watchman at a crossing was seen by the engineer of a moving train with a lantern in his hand, if the engineer was carelessly inadvertent, as to whether or not he would get out of the way. *Betchman* v. *Seaboard Air Line*, 75 · S. C. 68 (55 S. E. 140.) It was the duty of the engineer to closely observe the men on the track, and the moment he had reason to believe plaintiff was not going to get out of the way in time to avoid danger to promptly use the appliances at his command to check or stop the engine, so as to avoid injury to plaintiff. *Nelling* v. *Chicago, St. P. & K. C. R. Co.*, 98 Iowa 554, 561 (63 N. W. 568: 67 N. W. 404.) It would be useless for an engineer to simply observe, if when he plainly sees a track repairer in a place of danger, and as a prudent man has good reason to believe that he is not going to move from the track, he fails to take the proper measures at his command to stop the engine. We think the question of whether the engineer had good reason to believe for a considerable time before he endeavored to stop the engine and avoid the collision that the plaintiff was not going to get out of the way, and was reckless was, under all the evidence and circumstances, one for the jury. It appears that the engine was being used for switching purposes about the yards, where it was known to the engineer that several men were working; that the necessity for running at a high rate of speed was less than that of a regular train, and the management thereof different from that of an engine and train on its regular run, and the danger of running at a high rate of speed in such a yard, where several men

were engaged at work, greater. Therefore, when the engineer saw the plaintiff in a perilous position, and unmindful of the approach of the engine, it was his duty to take active measures, with the means at his command, to avoid the injury. *Sullivan* v. *Missouri Pac. R.*, 97 Mo. 113 (10 S. W. 852.) Taking all the evidence, we think it was a question for the jury to determine whether the engineer used ordinary care to avoid the collision, or carelessly and recklessly ran the engine against plaintiff, when he saw for some distance that plaintiff was in danger, and oblivious to the approach of the engine, and whether common prudence demanded of him as a reasonable man, that he should slacken his speed so as to have the engine under control and be able to stop it before striking plaintiff, in case he did not see it or move off the track: *Doyle* v. *Southern Pac. Co.*, 56 Or. 495 (108 Pac. 201) ; *Palmer* v. *Portland R. L. & P. Co.*, 56 Or. 262 (108 Pac. 211).

4. Defendant asserts that plaintiff was guilty of contributory negligence.

"Where the servant is engaged in performing service for the master, under circumstances which justify him in assuming that ordinary care will be observed to warn him of approaching danger, he is required to exercise only such care and vigilance in discovering peril and avoiding injury as is consistent with the performance of the work in which he is engaged. Any other rule would place the servant, while performing work for the master, in the same category as a trespasser upon the premises of the master." *St. Louis, I. M. & S. R. R. Co.* v. *Jackson,* 78 Ark. 100, 108 (93 S. W. 746, 748: 6 L. R. A. (N. S.) 646, 656.)

5. In *Kelly* v. *Union R. & T. Co.*, 11 Mo. App. 1, the court declares it to be "the settled law of the state, applicable to actions for injuries received by persons while upon railway tracks from passing trains, that, if it appears from the testimony produced by the plaintiff that the person injured, being *sui juris*, failed to make use of

his faculties of sight and hearing, when to do so would have enabled him to avoid the accident, there can be no recovery; and that the principle involved in this rule is equally applicable to the case of a traveler crossing a railway track, or a trespasser, or a bare licensee or person lawfully employed on the track; that a fair statement of the rule is that, when it appears that the person injured did not use his faculties, it is incumbent on him to show a reasonable excuse for failing to do so." Where plaintiff negligently assumed a position of danger in such a degree, and so contributed to his hurt as to leave him without right of recovery for any primary negligence of the other party, he may nevertheless recover, if the person charged with the wrong or injury became aware of his peril in time to avoid, by the proper use of all the means at his command, injuring him, and listlessly, inadvertently, or negligently failed to resort to such means, provided he is himself free from negligence after he became conscious of his danger. *Duncan* v. *St. Louis & S. F.*, 152 Ala. 118 (44 South. 418, 422.)   See, also, *Klutt* v. *Philadelphia & R. R. Co.* (C. C.) 145 Fed. 965; *Philadelphia & R. R. Co.* v. *Klutt*, 148 Fed. 818 (78 C. C. A. 508); I White, Personal Injuries on R. R. § 398; 1 Shearman & Redfield, Negligence, (5 ed.) § 99.

6. In the case at bar it may reasonably be believed that the position in which the plaintiff was engaged at work was a perilous one; and if it required both his hands to use the wrench, and one foot to hold the bolt to keep it from turning, it would certainly appear that his work would require some care and attention, and it is not proper to assume that plaintiff was negligent in placing himself in a position of danger, or that his fault, while attending to his duty, contributed to his injury.

"As a general rule, it is not contributory negligence as a matter of law for a person so employed not to be on a constant lookout for approaching trains." 2 Thompson, Negligence, § 1756.

So the question whether the omission to look amounts to contributory negligence is one for the jury. 5 Thompson, Negligence, § 5524. Whether plaintiff exercised ordinary care, or was guilty of contributory negligence in this case, was a question for the jury: *Baltimore R. R. Co.* v. *Peterson*, 156 Ind. 364, 373 (59 N. E. 1044) ; *Austin* v. *Fitchburg R. Co.*, 172 Mass. 484 (52 N. E. 527) ; *Comstock* v. *Union Pac. R. R. Co.*, 56 Kan. 228 (42 Pac. 724) ; *Sullivan* v. *Missouri Pac. R. Co.*, 97 Mo. 113 (10 S. W. 852) ; *Railroad* v. *Murphy*, 50 Ohio St. 135, 144 (33 N. E. 403.)

For these reasons, we think it was error for the lower court to direct a verdict for the defendant. The judgment is therefore reversed, and a new trial ordered.

REVERSED.