PHILADELPHIA & R. R. CO. v. KLUTT et al.

(Circuit Court of Appeals, Third Circuit. November 26, 1906.)

No. 21.

1. NEGLIGENCE—CARE REQUIRED AS AGAINST NEGLIGENCE OF ANOTHER.

No one will be relieved from liability for injury inflicted by him on another by reason of the fact that such other negligently exposed himself to the danger, if, when that situation was, or ought to have been, apparent to him, he omitted such reasonable precautions as would, if taken, have prevented the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 115.]

2. COLLISION—RUNNING DOWN OF ROWBOAT BY TUG.

The question whether a tug was liable for the death of the occupant of a rowboat, which was run down by the tug in the Delaware river opposite Philadelphia in the daytime, held properly submitted to the jury, even conceding the negligence of the deceased in attempting to cross ahead of the tug, on evidence showing that the tug had a loaded car float on each side, projecting ahead of it, which obstructed the view from it, and that no lookout was maintained on either tow, where there was also evidence tending to show that the boat of the deceased was caught by floating ice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 309.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 145 Fed. 965.

John G. Lamb, for plaintiff in error.
Francis Fisher Kane, for defendants in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge.  This was an action of trespass, brought in the court below by the widow of Andrew Klutt, on behalf of, herself and her minor children, against the Philadelphia & Reading Railroad Company, to recover damages for the death of her husband, Andrew Klutt, caused by the alleged negligence of the defendant.  On the morning of the 23d of December, 1903, a tug of the defendant company was proceeding up the Delaware river, on a course about midway between Petty's Island and the Pennsylvania shore, that portion of the river being about half a mile wide.  The tug was towing two floats carrying coal cars and a box car, and was lashed between them so far back that the floats carrying the cars extended some distance beyond the bow of the tug.  The day was clear, the tide was running down stream, and there was some floating ice.  Andrew Klutt, the decedent, was a truckman on Petty's Island, and was accustomed to take his produce in a row boat across the river to Philadelphia.  He was an experienced boatman, and at about 11 o'clock on the morning in question he started to cross the river in the rowboat from Petty's Island to Cramp's Shipyard, in Philadelphia.  When he started, the tug, with her floats and 16 cars thereon, was some little distance down the river, and Klutt started to cross in front of them.

So much as to the uncontroverted facts.  How far the tow was away when he started to cross its bow, and what were the probable chances of his clearing it in the then conditions of tide and ice, does not clearly appear from the evidence.  The floats were wide, as each had upon it two parallel tracks, upon which were the cars.  Their bows were square, and the evidence is uncontradicted that Klutt's boat was struck by the port corner of the barge nearest the Pennsylvania shore.  There is conflicting evidence as to the presence of much ice in the river, and also as to whether Klutt was embarrassed thereby.  Two disinterested witnesses, working on a boat tied to a pier in Cramp's Shipyard, testified that they saw Klutt some distance ahead of the tow, standing up in his boat, struggling to get out of the ice, in which they said he was caught.  The captain of the tug, on the other hand, swears that he was in the pilot house and could see over the tops of the coal cars, Klutt's boat on his right hand coming across his course, and that no ice embarrassed him, and that he was not standing up in the boat.  It is admitted that there were no lookouts on either of the floats, and the two witnesses who were working on the boat 20 feet above the water line, at Cramp's Yard say they could only see the roof of the pilot house across the cars on the float.  There was also conflicting testimony as to whether sufficient signals were given, after Klutt's boat was discovered in front of the tow, and whether the engines of the tug could have been stopped and reversed sooner, so as to have saved the man's life, the fact being undisputed that he had almost cleared the further float when his boat was struck.

Upon these facts, the case was submitted to the jury, with a charge that we think was eminently fair to the defendant, if it should have

been submitted at all. The plaintiff had a verdict, and upon the rendering of the judgment thereon, this writ of error was taken. There are several assignments of error, but they all turn upon the refusal of the court to take the case from the jury. Such being the case, the question before us is, not what conclusion we would have reached from the evidence, but whether the facts were or were not such that reasonably minded men might draw different conclusions therefrom, as to the negligence of the defendant and the contributory negligence of the decedent, or whether there was such conflict of testimony as to material facts, as made submission to a jury necessary. In a former trial between the same parties, the case was taken from the jury by the trial judge at the conclusion of the plaintiff's testimony, on the ground that the contributory negligence of the decedent was so clear that, as a matter of law, no recovery could be had. Upon a writ of error to the judgment in that case, sued out by the plaintiff, this court reversed the judgment and remanded the cause to the circuit court, with instructions to grant a new trial. 142 Fed. 394. It is to the judgment had in this new trial that the present writ of error is taken. While in this second trial the evidence on the part of the defendant is new and contradicts some of that adduced by the plaintiff, it does not affect the question as to whether the case should have been submitted to the jury. So far as the question of the negligence of the decedent is concerned, the facts are the same, and we have already decided, when the case was before us before, that the contributory negligence of the decedent was not so clear, as a matter of law, as to justify peremptory instructions to the jury in favor of the defendant.

But, assuming the negligence of Klutt, in passing in front of the tow, the question remains, whether there was negligence on the part of the defendant, after the imminence of Klutt's danger was apparent, or should have been apparent, to those on board the tug. Under these circumstances, did the defendant do all that an ordinarily prudent man should have done to avoid the accident? No one should be relieved from liability for injury inflicted by him on another, by reason of the fact that that other has negligently exposed himself to the danger, if, when that situation was or ought to have been apparent to him, he omitted such reasonable precautions as would, if exercised, have avoided the accident. This is the doctrine of Davies v. Mann, 10 Mees. & W. 546, which declares it the duty of one person, under certain circumstances, to avoid the consequences of another's negligence. The negligence which is actionable, notwithstanding the negligence of plaintiff, must in a certain sense be subsequent thereto. In other words, the negligence of the defendant, which must be established, has relation solely to a certain situation produced by the prior negligence of the plaintiff.

In the case before us, Klutt may be admitted to have placed himself negligently in front of the advancing tow. The question, then, is, could the defendant have reasonably done anything, or omitted to do anything, which would have saved Klutt from the consequences of his own negligence. In this connection, the absence or presence of lookouts upon the forward end of the floats, becomes important. The tow was navigating a river in front of a populous city, where boats

of all sizes and descriptions crossing both to and fro, were to be expected. Was it a continuing negligence, which made it negligence committed at the very time of the accident, to have dispensed with such lookouts? This, with the other controverted questions bearing upon the negligence of the defendant, after Klutt's dangerous situation was discovered, were for the determination of the jury. We say "after Klutt's dangerous situation was discovered," and add as a corollary, "or should have been discovered" by the defendant, because, not to have discovered what should have been under all the circumstances discovered, was a part of defendant's negligence, subsequent to that of the plaintiff.

The so-called doctrine of Davies v. Mann, supra, has been the subject of much refinement by courts and text writers. We think, however, that Judge Acheson, speaking for this court in the former case, has laid down the true principle applicable to this case, as follows:

"It is a settled principle of law that, although a plaintiff, who sues for an injury inflicted by the defendant, might, by the observance of proper care, have avoided exposing himself to the injury, yet this will not prevent him recovering damages from the defendant, if the latter discovered, or by the exercise of ordinary care might have discovered, the exposed situation of the plaintiff in time, by the exercise of ordinary care and diligence, to have averted the effect of the plaintiff's negligence and avoided the injury which happened. * * * It was for the jury to say whether, by the employment of a proper lookout, the defendant's tug might not have discovered the exposed situation of Klutt in time, by the exercise of ordinary care and diligence, to have avoided running down his rowboat."

To this principle, as applicable to the facts of this case, we adhere. The judgment below is affirmed.