### SMITH v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Fourth Circuit. December 17, 1913.)

No. 1154.

1. TRIAL (§ 142*)—GROUNDS FOR DIRECTING VERDICT FOR DEFENDANT—INSUFFICIENCY OF EVIDENCE.

An issue of fact is made for the jury whenever reasonable men might fairly differ as to the inference to be drawn from the evidence bearing on a vital point.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337; Dec. Dig. § 142.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. RAILROADS (§ 375*)—INJURIES TO PERSONS ON TRACK—DUTY AS TO TRES-
PASSERS.

The engineer of a train is under no duty to keep a lookout for tres-
passers unless he has reason to expect them on the track, but he is un-
der the duty to use due care to avoid injury to a trespasser whom he sees
on the track in a condition or situation indicating his inability to take
care of himself.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1284;
Dec. Dig. § 375.*

Care required of railroads as to trespassers on or near tracks, see note
to Louisville & N. R. Co. v. Womack, 97 C. C. A. 566.]

3. RAILROADS (§ 375*)—INJURY TO PERSONS ON TRACK—NEGLIGENCE OF ENGI-
NEER.

A finding that the engineer of a train saw a child five years old on the
track running ahead of the train in time to stop authorized a finding of
negligence if he failed to at once use every effort to stop the train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1284;
Dec. Dig. § 375.*]

4. RAILROADS (§ 400*)—INJURY TO PERSON ON TRACK—QUESTIONS FOR JURY.

Evidence considered, and *held* sufficient to require the submission to
the jury of the question whether the engineer of a train saw a child on
the track and was negligent in failing to apply the brakes at once.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381;
Dec. Dig. § 400.*]

Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern
District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

Action at law by Frances E. Smith, an infant, by her next friend,
Isaac V. Smith, against the Baltimore & Ohio Railroad Company.
Judgment for defendant, and plaintiff brings error. Reversed.

L. C. Somerville, of Point Pleasant, W. Va. (Somerville & Somer-
ville, of Point Pleasant, W. Va., on the brief), for plaintiff in error.

Rankin Wiley, of Point Pleasant, W. Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. [1] This action for personal injuries re-
sulted in a verdict for the defendant by direction of the District Judge;
and the main question presented to this court is whether the evidence
on behalf of the plaintiff made an issue of negligence on the part of
the defendant which should have been submitted to the jury. In de-
ciding this question the settled rule of guidance is that an issue of fact
is made for the jury whenever reasonable men might fairly differ as to
the inference to be drawn from the evidence bearing on a vital point.
Richmond, etc., R. R. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L.
Ed. 642; Texas & Pacific Ry. Co. v. Harvey, 228 U. S. 319, 33 Sup.
Ct. 518, 57 L. Ed. 852.

[2] The plaintiff, a girl five years old, and her brother, three years
old, were left by their mother for a short time near the track of the de-
fendant railroad company. They went on the railroad, and the plain-
tiff was run over by a passenger train and lost a leg and an arm. It
was not alleged in the declaration that the engineer in charge of the

locomotive was negligent in not keeping a lookout for the plaintiff or other persons on the track, nor was there any allegation or proof that the servants of the defendant company had reason to expect persons to be on the track at the place of the accident. On the contrary, the specific act of negligence charged, and that which the plaintiff undertook to prove, was that the locomotive engineer saw the plaintiff on the track in time to stop the train, but negligently failed to make the proper effort to do so until it was too late. The testimony adduced to support this allegation must therefore be considered in the light of the rule that the engineer of a train is under no duty to keep a lookout for trespassers unless he has reason to expect them on the track, but that he is under the duty to use due care to avoid injury to a trespasser whom he sees on the track in a condition or situation indicating his inability to take care of himself. Woodruff v. Northern Pac. R. Co. (C. C.) 47 Fed. 689; Sheehan v. St. Paul & D. Ry. Co., 76 Fed. 201, 22 C. C. A. 121; Baltimore & O. R. Co. v. Hellenthal, 88 Fed. 116, 31 C. C. A. 414; Cleveland, C., C. & St. L. R. Co. v. Tartt, 99 Fed. 369, 39 C. C. A. 568, 14 L. R. A. 98; Grand Trunk Ry. Co. of Canada v. Flagg, 156 Fed. 359, 84 C. C. A. 263. Many other cases on the subject are collated in a note to 8 L. R. A. (N. S.) 1069 et seq. This rule with its limitations extends to children. Morrissey v. Eastern R. R. Co., 126 Mass. 377, 30 Am. Rep. 686; Woodruff v. Northern Pac. R. R. Co. (C. C.) 47 Fed. 689; Ashworth v. Southern Ry. Co., 116 Ga. 635, 43 S. E. 36, 59 L. R. A. 592; Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361; note to 8 L. R. A. (N. S.) 1079.

[3] Since the plaintiff was a trespasser at a place where the engineer had no reason to expect her, the District Judge was right in charging the jury that the defendant would not be liable for the failure of the engineer to keep such a lookout as would have enabled him to see her in time to stop the train. In applying the rule above stated, it seems clear to the majority of the court, that if the engineer actually saw the plaintiff on the track and failed to use all reasonable means at his command to stop the train, there would be ground for the jury to draw the inference of actionable negligence. Surely the sight of a little girl of five years, not standing still nor moving off, but running down the track in front of the moving engine, might reasonably be regarded instant notice to the engineer of the child's being aware of the approach of the train, and in such a state of consternation as to be unable to take care of herself. If the jury should find that the engineer did see the plaintiff in this situation in time to stop, they might well say that as a man of ordinary discretion he should have known that he had not a moment to spare, and should have used every effort to stop the train. We cite only a few of the many cases supporting this conclusion. Gunn v. Ohio River R. Co., 42 W. Va. 676, 26 S. E. 546, 36 L. R. A. 575; Indianapolis, etc., R. Co. v. Pitzer, 109 Ind. 179, 6 N. E. 310, 10 N. E. 70, 58 Am. Rep. 387; Burg v. C., R. I. & P. Ry. Co., 90 Iowa, 106, 57 N. W. 680, 48 Am. St. Rep. 419; Southern Ry. Co. v. Chatman, 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675; Spooner v. D. L. & W. R. R. Co., 115 N. Y. 22, 21 N. E. 696; Southern R. R. v. Smith, 163 Ala. 174, 50 South. 390;

Ross v. Texas & Pac. Ry. Co. (C. C.) 44 Fed. 44; B. & O. Ry. Co. v. Hellanthal, 88 Fed. 116, 31 C. C. A. 414.

[4] The remaining question is whether there was evidence from which reasonable men might draw contrary conclusions as to the averment that the engineer did see the plaintiff in time to stop the train and failed to do so. The rate of speed was variously estimated by the witnesses at from 8 to 15 miles an hour. The engineers who testified on the subject agreed that a train running at a speed of 8 to 15 miles an hour would stop within a distance of 60 to 80 feet upon application of the emergency brakes, and that it would take from one to three seconds to make the application. The engineer in charge of the locomotive testified that he was looking ahead, but, owing to the curve of the road, the boiler and other portions of the locomotive prevented him from seeing the children till he was within 30 feet of them; that he instantly applied the air brakes, blew the alarm whistle, and made the stop in about 70 feet. This evidence as to the whistle and the quick stop was corroborated by a passenger on the train; and the statement that on a curve the view ahead would be obstructed by portions of the locomotive was confirmed by several witnesses. If the other evidence made no issue as to this course of conduct, the conclusion would be inevitable that the engineer was blameless. But even giving full force to the strong presumption that his anxiety to save the child from peril instantly became uppermost, and bearing in mind that he was in a better position to judge what his opportunity was and to know the time and manner of his action, yet we think there was evidence from which it would have been possible for the jury as reasonable men to infer that the engineer at first relied on the alarm whistle and did not put on the emergency brakes as soon as he saw the child. The testimony of the civil engineers who measured the ground was to the effect that the road is straight for 130 feet approaching the point where the accident occurred, and that there is a curve of only $2\frac{1}{5}$ feet for 100 feet more; and there was testimony from two mail clerks on the train that there were first three or four blasts of the whistle, then a little interval followed by the application of the brakes and seven or eight short blasts. These witnesses "guessed" the distance traveled after the first signal to be 200 feet. Ayelshire, a witness standing a short distance from the road, testified that he saw the train and heard it blow, and looked down the track, and saw the children, that the whistle was sounding short, quick blasts at a point which turned out to be about 300 feet from the place of the accident.

Having in view the evidence that the engineer was looking ahead, that he had a straight track of 130 feet, and that the train could be stopped in that distance, and the evidence of several quick blasts of the whistle at an appreciable time and distance before another series of blasts and the application of the air brakes, we are unable to resist the conclusion that reasonable men might draw these different inferences on vital issues, namely: First, that the engineer's statement that he used every means at hand to stop the train as soon as he saw the children was correct, or that in the emergency which was upon him he at first relied on the alarm whistle and failed to apply the brakes

until it was too late; second, that the engineer in the emergency which was upon him did all that could be expected of a reasonably prudent man, or that, even allowing for the emergency, a reasonably prudent man could and would have stopped the train in time.

For these reasons this court is of the opinion that the District Court erred in directing a verdict for the defendant, and the judgment of the District Court is reversed, and the cause remanded for a new trial.

Reversed.

KNAPP, Circuit Judge (dissenting). The conclusions of the majority involve the affirmance of two propositions: First, that there was evidence from which the jury might find that the engineer did in fact see these children when far enough away to stop the train before reaching them, although he testified positively to the contrary; and, second, if the jury so found, that there was evidence from which they might further find that he did not thereupon do what a reasonably prudent engineer should have done to avoid the accident.

Assuming that the first of these propositions is justified by the proofs submitted, I am of opinon, after careful examination of the record, that nothing was shown which would sustain a verdict for plaintiff on the theory of the second proposition. It appears from the testimony that the engineer could not see the children on the track ahead of him until the locomotive rounded a curve which terminated about 130 or 140 feet from the point where plaintiff was injured. Undoubtedly, if he had reversed the engine and used the emergency brakes upon the instant, the train would have been stopped in time, since by those means it could have been brought to a standstill, at the speed it was moving, before going more than 60 to 70 feet, as was in fact done in this instance. What the engineer saw, or could have seen, when the stretch of straight track came within his line of vision, was "these two little children running down the track," to use the language of the only witness who testified as to where they were and what they were doing at that moment.

What the engineer at once did, as the jury might find from the plaintiff's proofs, was to sound several sharp, warning blasts with the whistle, and then a few seconds later, for it was all a matter of seconds, to reverse the engine and apply the emergency brakes, but unfortunately not soon enough to avert the disaster. Because he did not *immediately* use every effort to stop the train, but for a brief interval resorted to the warning whistle, it is held to be a question of fact for the jury whether "a reasonably prudent man could and would have stopped the train in time."

To this I cannot agree. In my judgment, there is no aspect of the testimony or allowable inference therefrom which would support a finding of imprudent or unreasonable conduct on the part of the engineer. Indeed it seems to me that he did just what a careful engineer would be likely to do in such an unexpected emergency. Under the circumstances disclosed, it would be the natural, almost instinctive, act of an engineer to give signals of warning, which would presumably have the effect of clearing the track. And until he had some reason to apprehend that such signals might fail of their purpose, the

engineer would not be chargeable, in my opinion, with want of due care for neglecting to take the most effective measures for stopping his train. This is not the case of little children playing on the track, heedless of the coming of a train and unconscious of danger, nor of persons discovered on the track whose postures and actions indicate that they are in a more or less helpless condition. The children in question, when they could first be observed by the engineer, were "running down the track" in front of him, evidently aware that the train was approaching, and apparently intending to get out of the way. There was nothing to prevent them from stepping off the track on either side, and the little boy, two years younger than plaintiff, did leave the rails, and was seen "climbing the bank" before the locomotive passed by him. In view of these undisputed facts I think the engineer had a right to suppose, when the children first came in sight, that they would get off the track in response to his warning, and that he was justified in acting upon that supposition. To say that the jury might find him at fault under such circumstances, because he did not instantly, or as quickly as possible, do everything in his power to stop the train, and because, had he done so, the train could have been stopped in time, is to say in effect, or permit the jury to say, that it was not reasonably prudent on his part to assume, even for a few moments, that the plaintiff would heed his warning and get off the track, although the assumption is based upon everyday experience and observation. It is also to say, or permit the jury to say, that the duty of the engineer was measured, not by what reasonable judgment would dictate in such a situation, but by *what he might have done* as the event proved. In short, the conclusions of the majority involve a rule of obligation which seems to me at once unjust to defendant and against the weight of authority. In my opinon the verdict was properly directed, and the judgment should therefore be affirmed.