MAGGIE GRAY, ADMINISTRATRIX OF K. L. GRAY, v. SOUTHERN RAILWAY COMPANY.

(Filed 23 December, 1914.)

1. **Railroads—Master and Servant—Federal Act—Issues as to Damages—Negligence—Contributory Negligence—Diminution of Damages.**

   It is not required in an action brought under the Federal Employers' Liability act that damages be assessed under separate issues, one as to the full amount sustained and the other as to the amount to be deducted therefrom by the answer to the issue of contributory negligence; and where the trial judge has correctly charged the jury in this respect, under the one issue of damages, it will not be held as erroneous.

2. **Railroads—Negligence—Evidence—Curve—Unobstructed View.**

   Where the plaintiff's intestate has been killed by the defendant railroad's train, it is competent for a witness to testify that a curve near the place of the injury did not interfere with the engineer's view from his engine at a certain point north of the place, when such is relevant to the inquiry as to whether the engineer saw, or by keeping a proper lookout could have seen, the danger of the intestate in time to have avoided killing him.

3. **Trials—Nonsuit—Evidence—How Construed.**

   In this case it is held that there was sufficient evidence to take the case to the jury, viewing it in the light most favorable to the plaintiff, and defendant's motion to nonsuit was properly disallowed.

4. **Railroads—Federal Employers' Liability Act—Master and Servant—Negligence—Common Law—Last Clear Chance—Trials—Instructions—Appeal and Error.**

   The Federal Employers' Liability act was passed for the benefit of railroad employees, to afford them a recovery of damages when under the common law their contributory negligence would have totally deprived them of the right; and where there is evidence that an employee of the defendant has placed himself in a position of danger on the track in front of an approaching train, but that the injury complained of would not have been sustained, had the employees on defendant's train kept a proper lookout ahead and had performed the duties required of them under the circumstances in stopping the train, the common-law doctrine of the last clear chance is applicable; and a requested instruction to the

167—28

effect that the defendant would not be liable if it did all it reasonably could to stop the train in time, after seeing the intestate's danger, is properly refused.

BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendant from *Adams, J.,* at July Term, 1914, of RANDOLPH.

*John A. Barringer for plaintiff.*
*John T. Brittain and Manly, Hendren & Womble for defendant.*

CLARK, C. J. This is an action for the wrongful killing of the plaintiff's intestate, under the United States Employers' Liability act, ch. 149, 35 Statutes at Large, 65, amended ch. 143, Statutes at Large.

Exceptions 1 and 2 are that issues as to the amount of damages by reason of the negligence of the defendant and of plaintiff's contributory negligence were not submitted to the jury as separate and distinct issues. But the statute does not require this. The court instructed the jury, in accordance with the statute, to assess the damages by reason of the death of the intestate, if they found it was due to negligence on the part of the defendant, and to assess the amount of diminution on account of the contributory negligence of the deceased, and the difference, if any, would be their verdict.

The death of the intestate occurred in Virginia, but it was admitted that the defendant was engaged in interstate commerce and that the intestate was employed by the defendant in such commerce at the time of his death. The judge read the Federal act on the subject and carefully explained it to the jury. He told them that it required that the damages "shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. This means that the damages shall be diminished in proportion to the amount of the employee's negligence, as compared with the combined negligence of himself and the defendant, . . . and that where the causal negligence, that is, the negligence causing the death, is partly attributable to the employee and partly to the carrier, the employee shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both, the purpose being to abrogate the common-law rule exonerating the carrier from liability in such cases, and to substitute a new rule confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable to the employee."

The court submitted only the two issues, "Whether the intestate of the plaintiff was killed by the negligence of the defendant, as alleged in the

complaint," and "What damage, if any, is the plaintiff entitled to recover?" But with this instruction the whole matter in dispute was fairly submitted to the jury, and it was not error not to submit separate issues as to how much was assessed by the jury as the total damages and how much was deducted for the contributory negligence. Where the issues submitted fully cover the disputed points it is not error to refuse to submit other issues. *Hendricks v. Ireland,* 162 N. C., 523, and cases there cited; *R. R. v. Earnest,* 229 U. S., 114.

Exception 3 is to the admissibility of the testimony of S. W. Jones, that the curve did not interfere with the view at the point 38 rails north of the place of the accident. The testimony was admissible, and the defendant's brief argues merely the weight to be given such testimony, which was a matter for the jury.

Exception 4 is abandoned, as it does not appear in the defendant's brief. Rule 34.

Exception 6 was to the refusal to permit the witness Hippert to testify whether, taking into consideration the curve of the track and the other natural objects there, he could have seen the body beside the track before he did see it. This would have been an expression of opinion which the jury should have drawn from the facts in evidence, and not the witness. It would be better to admit such evidence, but its admission or rejection can rarely be of sufficient importance to affect the result or justify a new trial.

Exceptions 5, 7, and 8 are to the refusal of the motion to nonsuit and to charge the jury to answer the first issue "No." There was sufficient evidence to go to the jury, and these exceptions need not be discussed. On such motion the evidence must be considered in the most favorable light to the plaintiff. *Hodges v. Wilson,* 165 N. C., 323; *Walters v. Lumber Co., ib.,* 388. This is familiar learning.

Exceptions 9, 10, 11, 12, 13, 14, and 15 are to the charge of the court, and rest upon the idea that the defendant owed the intestate no duty whatever until the peril of the deceased was discovered by the engineer. This would destroy the entire doctrine of "the last clear chance" in cases of negligence. This is not the intent of the employers' liability statute, which is in the interest of the party injured, by making contributory negligence when it exists concurrently with negligence on the part of the defendant, not a complete bar to recovery, as heretofore, but only a matter in abatement in proportion to the comparative negligence of the party injured. The common-law doctrine of negligence still applies, in the construction of the statute, as to the negligence of the defendant. It was the duty of the engineer and fireman to have kept a proper lookout on the track, and if they could not do so, it was the duty of the defendant

to have had still another person on the lookout to prevent any avoidable accident. · *Arrowood v. R. R.,* 126 N. C., 629. If the defendant could by reasonable diligence have discovered the critical condition of the deceased in time to have averted the injury, it is liable, notwithstanding the negligence of the deceased. 3 Labatt M. and S. (2 Ed.), 3390, Note 5; *R. R. v. Ives,* 144 U. S., 408.

It is not necessary to discuss more fully the facts in the case, as they are fully presented in the careful charge of the court, with the correct application of the law. The distance at which the body of the deceased could have been seen was entirely a question for the jury upon the evidence, as well as the distance within which the train could have been stopped.

The deceased had put his red light in the middle of the track as a danger signal and had gone to sleep, lying beside the track with a white light by him. The engineer testified that he knew that this flagman should be there and that these lights were a danger signal; that he did not undertake to slacken his speed till he got within 300 feet or less, when he blew the signal, and the deceased waking and rising up, his head was struck by an iron step, which killed him; that if he had blown the signal sooner the sleeper would probably have gotten up in time to have avoided being struck. There was evidence tending to show that the engineer and fireman were not keeping a proper lookout on the track, if any, until they got within 50 yards of the sleeper. *Dallago v. R. R.,* 165 N. C., 269.

The whole subject is fully discussed in a late case, *Draper v. R. R.,* 161 N. C., 310, in which *Allen, J.,* states the law as follows: "In an action for damages for the negligent killing of plaintiff's intestate, who was down and helpless on the track and was run over by the defendant's train, involving the question whether the engineer by the exercise of ordinary care could have stopped the train in time to have avoided the killing, the jury are not bound by the opinions of the witnesses, as to the distance within which the train could be stopped, but may consider the evidence as to the condition of the track, the grade, the length and weight of the train, the speed, and other relevant circumstances, and upon the whole evidence determine within what distance it could have been stopped."

It is not sufficient defense of the negligence of the defendant that the engineer could not have stopped the train in time to avoid the death of the plaintiff's intestate after he perceived him on the track. The question is whether the engineer could have stopped the train in time to have avoided killing the deceased after he could have perceived the danger of the deceased, had the engineer and fireman been in the exercise of proper

diligence on the lookout. *Ray v. R. R.,* 141 N. C., 87; *Farris v. R. R.,* 151 N. C., 491; *Edge v. R. R.,* 153 N. C., 216; *R. R. v. Ives,* 144 U. S., 408.

No error.

BROWN, J., dissenting: I am of opinion that the court below erred in refusing the defendant's prayer for instruction, and in applying the decisions of this Court instead of following those of the Federal courts, inasmuch as it is admitted that the action was brought under the Federal employers' liability act. All the evidence tends to prove that plaintiff's intestate, Kenneth L. Gray, was a brakeman on a freight train running between Spencer, N. C., and Munroe, Va. The freight train was stopped and cut in two for shifting purposes. Gray was sent forward to flag No. 37, a fast mail, due to pass in about 10 minutes.

It was Gray's duty to go up the track eighteen telegraph poles, place one torpedo on the engineer's side, then go nine telegraph poles further, place two torpedoes on the engineer's side, and then return to the place where he had placed the one torpedo, and wait with his lanterns until the train arrived.

Gray did not place any torpedoes on the track, but he went up the track about three-quarters of a mile, placed his white lantern on the end of a tie, his red lantern on the rail, and lay down with his head on the end of another tie, with his body on the outside of the track, and went to sleep.

Approaching the point of the accident on the morning of 30 August, No. 37 was four minutes late, and was running 55 to 60 miles an hour. Just before rounding the curve in the cut, the engineer had blown the station blow for Dry Fork station. The engineer was in his seat, keeping a proper lookout ahead, when he emerged from the cut, and while rounding the right-hand curve he saw the lanterns sitting on the track ahead of him. He recognized it as a flagman's signal, and answered the signal with two blasts of the whistle. About the time he had finished answering the signal, he reached the point where the track straightens, his headlight fell upon the track in front of him, and he saw an object lying beside the track that he thought was a man. He was then about 500 feet from the point of the accident. He immediately applied his brakes in emergency, shut off his engine, and stopped his train as quickly as he could.

Gray's head, being on the cross-tie, came in contact with the step of the tender as it passed, and he was killed. There is not a scintilla of evidence that the engineer of No. 37 saw Gray, or discovered his condition, in time to stop.

The court instructed the jury that if the engineer in charge of the approaching train saw, or by the exercise of ordinary care could have seen, the perilous situation and could have averted the injury by any available means in his power, reasonably consistent with the safety of the train and the passengers, and failed to do so, then they should find that the defendant was negligent.

In administering the Federal liability act the State courts are bound by the construction and decisions of the Federal courts. Since Congress has taken possession of the field of employers' liability to employees in interstate transportation by rail, all State laws upon the subject are superseded. *Seaboard Air Line Ry. v. Horton,* 223 U. S., 402; *Mondou v. Ry. Co.,* 223 U. S., 1.

Not only have State statutes been made inapplicable, but the common law as well, where a construction has been placed upon it by the State courts differing from that of the Federal courts. *South Covington R. Co. v. Finan,* 153 Ky., 340; *W. U. Tel. Co. v. Milling Co.,* 218 U. S., 406. This subject is elaborately and ably discussed by *Mr. Justice Myers* of the Supreme Court of Indiana in the recent case of *So. Ry. v. Howerton,* 105 N. E. Rep., 1026, where all the authorities are collected.

Under the law as applied by the Federal courts, the defendant is liable if it could have avoided the injury by the exercise of ordinary care, only after actually discovering the perilous situation. *Little Rock R. and E. Co. v. Billings,* 173 Fed., 903; Note 55, L. R. A., p. 424; *Coasting Co. v. Tolman,* 139 U. S., 551; *Newport News and M. V. Co. v. Howe,* 52 Fed., 362; *Buckworth v. Grand Trunk Western Ry.,* 127 Fed., 307; *N. Y., C. and H. R. v. Kelly,* 93 Fed., 745; *Smith v. R. R. Co.,* 210 Fed., 414.

In *Newport News and M. V. Co. v. Howe, supra,* the plaintiff was a brakeman on a freight train; the train parted and the engine with the forward section of the train ran some distance ahead before the accident was discovered. The conductor on the rear portion of the train sent Howe ahead with a lantern to signal the engine and to give the engineer information as to the whereabouts of the rear cars. Howe went forward several hundred yards, sat down on the end of a tie, put his light down near him, and went to sleep with his arm thrown over the rail.

The engineer, after running about 5 miles, discovered the parting, and started back with his engine and tender to take up the rest of the train. The fireman testified that when within a distance of between 100 and 200 feet from the point where Howe lay, he saw the reflection of the light from Howe's lamp. He called to the engineer: "Look out! there they are," meaning the rear portion of the train.

He looked again and saw on the other side of the track an object which he took to be the brakeman waiting to step on the engine. He crossed to the engineer's side and then saw the prostrate man only 10 or

15 feet from the approaching engine. He signaled the engineer, who applied the brake, but was unable to stop before the wheels had passed over Howe's arm and cut it off.

A witness, McGuire, testified that the engineer did not look out of the cab window, and that if he had looked out he would have seen Howe and could have stopped the engine in time to avoid the accident. The rules of the company required the engineer, under these conditions, to signal his return by blowing his whistle at certain intervals, and not to run at a higher speed than 4 miles per hour. Both of these rules were being violated. *Judge Taft,* writing the opinion, says: "While an engineer who fails to keep a sharp lookout upon the track is wanting in due care to passengers and lawful travelers, because of the probability of danger to each from such failure, such conduct is not a want of due care with respect to a man asleep on the track, because of the presumption on which the engineer has a right to rely, that no one would be so grossly negligent in courting death. As applied to cases like the present, therefore, we believe the rule relied on by the counsel of plaintiff below should be construed to mean that the negligence of the plaintiff will be no defense, if the defendant, *after he knew the peril of the plaintiff,* did not use due care to avoid it."

This case cites *Coasting Co. v. Tolson,* 139 U. S., 551, and referring to that case, *Judge Taft* says: "This would seem to show that, in the opinion of the Supreme Court, knowledge of plaintiff's peril was required to make the rule applicable."

In *Little Rock R. and E. Co. v. Billings, supra,* the Court, composed of *Justices Sanborn, Pollock,* and *Van Devanter,* the latter of whom is now a justice of the Supreme Court of the United States, said: "As deduced from the foregoing authorities, and many others that might be cited, this qualification may be stated as follows: A., who by his own negligent act or conduct has placed himself in a position of imminent peril, of which he is either unconscious or from which he is unable to extricate himself if conscious, may not be carelessly, recklessly, or wantonly injured by B., who, after he has discovered and knows the helpless and perilous condition of A., has it within his power to avoid doing him an injury by the exercise of reasonable care and diligence in the use of such instrumentalities as he can command; and the failure to exercise such reasonable care and diligence on the part of B. under such circumstances will constitute actionable negligence, rendering him liable in damages to A., notwithstanding the prior negligent act of A. in placing himself in position to receive the injury."

To my mind, it is quite plain that in charging the jury upon the measure of the engineer's duty the trial judge should have followed the Federal and not the State rule.

Testing this, case by our own State decisions, notably the unanimous opinion of the Court in *Holland v. R. R.*, 143 N. C., 435, the plaintiff should not be permitted to recover.

MR. JUSTICE WALKER concurs in this dissenting opinion.