BRIEN v. DETROIT UNITED RY.

(District Court, E. D. Michigan, S. D. October 25, 1917.)

No. 5871.

1. RAILROADS ☞330(1)—INJURIES TO PERSONS ON TRACKS—RIGHT OF TRAVELER.

A traveler on a highway, who sees an approaching interurban electric car, has the right to assume, until the contrary becomes apparent, that the motorman is keeping a proper lookout, and can and will see him and his position at least as far as he himself can see the car.

2. NEGLIGENCE ☞75—CONTRIBUTORY NEGLIGENCE—EXCUSE.

A person placed in a dangerous position is not justified in remaining there in order to save property from injury, if he has reason to believe that his remaining will result in his own injury; yet it is the duty of the person to make reasonable efforts to save his property, and he is not justified, on the ground of self-preservation, in abandoning property to probable injury, before such abandonment appears reasonably necessary to avoid personal injury.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. RAILROADS ⊚⟿350(13)—INJURIES TO PERSONS ON TRACKS—JURY QUESTION.
   In an action by plaintiff, an executrix, for the death of her decedent, resulting from a collision between defendant's electric interurban car and the motorcar, which decedent had been driving from the center of the city to a suburban resort, where it appeared that decedent remained for a moment in the car, which had become stalled on defendant's tracks, after seeing the approach of defendant's car, the question of the decedent's contributory negligence *held* for the jury.

4. RAILROADS ⊚⟿329—CROSSING ACCIDENTS—NEGLIGENCE.
   Where the motorcar which deceased was driving became stalled on defendant's tracks, and his companion alighted to crank the car, deceased cannot, though he remained in the car for a short time after seeing defendant's electric car approaching, be deemed guilty of contributory negligence, because his choice proved unwise, having only a moment to decide his course.

5. RAILROADS ⊚⟿320—CROSSING ACCIDENTS—LAST CLEAR CHANCE DOCTRINE.
   Where a motorman in charge of an electric interurban car either sees or by the exercise of reasonable care should see that a traveler rightfully on crossing cannot or apparently will not remove himself therefrom in time to avoid being struck, and the motorman fails to stop his car, although able by the exercise of ordinary care so to do, and thereby injures the traveler, the motorman is guilty of negligence, for which his employer, operating the street car, is liable.

At Law. Action by Harriett C. Brien, executrix of the estate of James Brien, against the Detroit United Railway. There was a verdict for plaintiff, and defendant moved for new trial. Motion overruled.

Dohany & Dohany, of Detroit, Mich., for plaintiff.
William G. Fitzpatrick, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This is an action of trespass on the case, brought by the plaintiff, a resident of Massachusetts, as executrix of the estate of James Brien, deceased, to recover from the defendant, a Michigan corporation, damages for the negligent killing of plaintiff's decedent by the defendant, through one of its motormen. The cause was submitted to a jury, which returned a verdict for plaintiff, and the defendant has moved for a new trial, alleging error in the instructions of the court and urging that the verdict is against ·the weight of the evidence.

The testimony showed that on the day of the accident in question, late in the afternoon, in June, plaintiff's decedent, James Brien, and his brother, Christopher, drove in an automobile belonging to Christopher, but being driven by James, northward on Woodward avenue from Detroit to Poplar Park, a suburban community about 10 miles north ·from the center of the city. About 6:30 o'clock, and while ·it was quite light, they arrived at Poplar Park avenue, a driveway running into Poplar Park westerly from, and at right angles to, Woodward avenue, which runs in a general northerly and southerly direction. The defendant operates fast interurban electric cars on a double track on Woodward avenue from Pontiac to Detroit, a distance of about 25 miles. These tracks are parallel with the public highway, and are 8 feet westerly of the west side of the cement paved portion

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of such highway. Such tracks and highway intersect Poplar Park avenue at right angles. When the automobile mentioned reached Poplar Park avenue, it was turned to the left in order to cross said tracks and enter Poplar Park. It safely passed the easterly (being the north-bound) track, but before crossing the westerly (or south-bound) track it was struck by a south-bound electric freight car operated by defendant, and plaintiff's decedent sustained injuries from which he died soon afterwards. There is a sharp conflict in the testimony as to how the accident occurred. It was the claim of plaintiff, and the testimony produced by plaintiff tended to show, that while the automobile, driven by plaintiff's decedent, was on the south-bound track the engine stalled, because of rough places in the crossing, and the automobile stopped suddenly upon such track; that just before turning to cross the tracks both plaintiff's decedent and his brother looked northerly along said tracks, but no car was visible; that at the time the engine stalled, the south-bound electric car already mentioned was visible near the so-called 10-mile road, about 850 feet north from Poplar Park avenue; that plaintiff's decedent at first tried to start the engine from his seat, but was unable to do so; that as soon as the car was stalled the brother, Christopher, who was sitting on the left of the front seat, James sitting on the right, opened the left-hand door of the automobile and stepped out upon the ground and to the front of the automobile, and endeavored to crank it so that decedent, who kept his seat, could drive off from the track; that he then looked again to the north, and saw the car between 100 and 150 feet from them; that before he was able to take hold of the crank his attention was attracted by the fact that the car was almost upon them, and he was forced to jump backward to avoid being struck; that he then noticed that his brother was trying to get from behind the steering gear and to leave the machine through the door which he had left open; that while decedent was attempting to escape from the automobile the latter was struck by the electric car and the decedent hurled to the ground, sustaining injuries from which he died two days later.

It was the claim of the defendant, supported by the testimony of the motorman and of the conductor in charge of the car in question, that this automobile was turned upon the crossing and across the track suddenly and when the car was about 300 or 400 feet distant; that the car did not stall and did not come to a stop before the accident; that neither of the two men left the automobile before it was struck; that the motorman and the conductor were in the front vestibule of the car, looking ahead at the time, and saw the automobile as it was driven upon the track; that the power was then shut off; that soon after the air was applied, the application being completed when the car was about 150 or 200 feet from the crossing; that when the automobile was first seen it was impossible to stop the car in time to avoid a collision, although as soon as it was seen that the automobile was in danger every possible effort was made to stop the car and avoid such collision. The evidence showed that this crossing was in daily use by traffic, and had been for a considerable period before this accident; that the automobile could have been seen at the 10-mile road, which was, as already

stated, about 850 feet distant to the north; and that the car could have been stopped within from 500 to 650 feet.

The questions as to the contributory negligence of the plaintiff and the negligence of the defendant were submitted to the jury. The substance of the instructions of the court on these points is shown by the following extracts from the charge:

"I say to you, as a matter of law, that if the accident occurred in the manner that the defendant claims—if the automobile did not stall upon the track—there can be no recovery in this case, and that would dispose of the case in favor of the defendant. * * * If he turned and drove upon that track, in front of that car, he would be negligent, and guilty of negligence which caused the accident, for failure to do several things that he ought to do.

"So, while I will give you more specific and definite charges later with reference to the law, the real necessities for charging you with reference to the law from this point on, are made necessary on the theory, and in case that you find, that the accident occurred in the manner that the plaintiff claims, and by the stalling of the automobile.

"In the event that the accident occurred by the stalling of the automobile, then, as a general proposition, this is the rule of law governing the situation: There is a duty resting upon parties that drive across street car tracks, interurban street car tracks, at the usual crossings, and there are also duties resting upon the companies who operate the cars, the street cars. There is a duty resting upon the motorman, and by the 'motorman' I mean the street car company; and when I say 'street car company' in that regard I mean the motorman. Each has his rights. The street car company has a right to operate its trains up and down its tracks, and the drivers of automobiles have a right to cross the tracks at these regular crossings. Each, however, at the same time has its duties to perform in so passing along the track or across the track. Now, it is the duty of the motorman in driving the street car—and it was the duty of the motorman in driving this car—to use reasonable care in keeping a lookout for people and vehicles ahead of him upon the track; and if he saw people in an automobile stalled upon the track ahead of him, to use reasonable care to avoid striking them and injuring them, provided he saw they were in danger, and were not going to be able to get out of his way. If he failed to perform that duty, and his failure to perform it was the proximate cause of the injury, and his failure resulted in striking the automobile, then the operator of the car, and the company employing the operator of the car, were guilty of negligence.

"On the other hand, it was the duty of the driver of the automobile—the plaintiff's decedent, in this case—to look and to use reasonable care and diligence for his own safety, to look, before turning across the street car track, to see if there was any street car approaching, and then, if he turned to drive across the track, to use reasonable care and caution in driving across the track, and operating his car, to see that he did not become stalled upon the track, to use reasonable care and caution and to keep watch to see if a car was approaching, and, if he got stalled upon the track, to use reasonable care and caution to get out of the way of the car and off the track before he himself was injured. * * *

"I use the word 'negligence,' meaning that if the defendant's motorman, in operating the train, two freight cars, at the time in question, kept such a lookout for passengers, for people or vehicles on the track ahead of him, at the time and place in question, as a reasonably prudent motorman would, under the surrounding circumstances—or, rather if he failed to do that, and his failure to do that was the proximate cause of the injury in this case, then the defendant was guilty of negligence, or, if he saw the automobile upon the track, and failed to use reasonable care, such care as an ordinarily careful motorman, under similar circumstances, would have used to stop his car and prevent the collision, and such failure was the proximate cause of the accident, then the defendant would be guilty of negligence. * * *

"I want to relieve the case of some other unnecessary issues. There can

be no recovery except upon the issue I have already pointed out to you, and no recovery by the plaintiff upon any other issue, or upon any other theory. If at all, it must be on the theory that the automobile was stalled, and that the motorman either saw it, or, with reasonable care, would have seen it, in sufficient time, so that, with the exercise of reasonable care, he could have stopped the street car and prevented the accident. I say, this lawsuit is entirely upon that theory; and there can be no recovery—if there is a recovery —upon any other theory. There can be no recovery upon any theory of negligence on the part of the defendant company, or any of its employés, prior to the time when the automobile—if you find it was stalled upon the southbound track—could have been seen by the motorman approaching from the north. There can be no recovery for anything that occurred before that time, because, as you will see under the charge in this case, as I have outlined it to you, if there was any negligence for which the plaintiff can recover, it must occur after that time. * * *

"If the jury believes, from the evidence, that the plaintiff's decedent, as a reasonable man, acting prudently under all the circumstances, should have noted the approach of that car, and its closeness to him, in time to have permitted him to leave the car and get to a place of safety, then the jury would be justified in finding him guilty of such negligence as would defeat plaintiff's right to recover.

"As a matter of law, the plaintiff's decedent's first duty was to himself in the protection of his life and limb, and he was not justified in remaining unreasonably in a place of peril for the purpose of conserving or protecting property, and his desire to conserve property would not excuse him from the exercise of his senses of sight or hearing for the purpose of apprising himself of the rapid approach of the car and its proximity to the automobile in time to enable him, if necessary, to leave the car and go to a place of safety."

It is urged by defendant that on the present record plaintiff's decedent was guilty of contributory negligence as a matter of law, and also that the court erred in instructing the jury that, if the motorman might by the exercise of reasonable care have seen the automobile in time to have avoided the accident, his failure to see such automobile within such time constituted negligence; it being the claim of defendant that the motorman would be guilty in this respect only if, after actually seeing the automobile, he failed to exercise ordinary care in stopping his car in time to avoid a collision.

[1-3] On the evidence introduced, I am of the opinion that reasonable men might honestly differ on the question whether plaintiff's decedent was guilty of negligence in failing to leave the automobile immediately after it became stalled. It seems to me that he might well have reasonably believed that, with the electric car over 800 feet away, it was not necessary that he should immediately abandon his brother's automobile to injury or destruction without an attempt to save it, if indeed he supposed that there was any danger of its being struck by the approaching car. It is a matter of common knowledge that a stalled automobile can often be started within a very few seconds. He had a right also to assume, until the contrary became apparent, that the motorman was keeping a proper lookout, and could and would see him and his position at least as far away as he himself could see the electric car. It is true that a person placed in a dangerous position is not justified in remaining there in order to save property from injury, if he has reason to believe that his remaining will result in his own injury. It is also true that it is his duty to make reasonable efforts to save his property, and that he is not justified, on the ground of self-

preservation, in abandoning such property to probable injury before such abandonment appears to him reasonably necessary to avoid personal injury. Whether, under the circumstances here presented, decedent waited, in the effort to save this automobile from harm, longer than he should have done in the exercise of ordinary care before abandoning it to its fate and proceeding to a place of greater safety, was, in my opinion, a question of fact for the jury under the instructions given them, portions of which have been already quoted. Southern Railway Co. v. Smith, 214 Fed. 942, 131 C. C. A. 238; Great Northern Railway Co. v. Harman, 217 Fed. 959, 133 C. C. A. 631, L. R. A. 1915C, 843; King v. Grand Rapids Railway Co., 176 Mich. 645, 143 N. W. 36; Kansas City-Leavenworth Railway Co. v. Langley, 70 Kan. 453, 78 Pac. 858.

[4] It should also be remembered that deceased was placed in a position where he was obliged to decide quickly what he should do, and he is not to be considered negligent merely because he chose a course of action which the event proved was an unwise choice. As was said in Lehigh Valley Railroad Co. v. Kilmer, 231 Fed. 628, 145 C. C. A. 514:

"What the plaintiff did after he got upon the track is not a matter of controlling importance. In such a case as that in which the plaintiff then found himself suddenly put in peril, he is excusable if he made an unwise decision as to what he should do. The rule on this phase of the matter is correctly laid down in Shearman & Redfield (6th Ed.) vol. 1, par. 85a, where it is said: 'If one is placed by the negligence of another in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in such a position might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance. Even if, in bewilderment, he runs directly into the very danger which he fears, he is not at fault. The confusion of mind caused by such negligence is part of the injury inflicted by the negligent person, and he must bear its consequences.' "

[5] It will be noted that, in so far as the alleged negligence of the defendant is concerned, the only question as to such negligence submitted to the jury was that involved in the so-called last clear chance doctrine. As already stated, it is the contention of the defendant that this doctrine applies only when one person has actually discovered that another person is in a position of danger, from which he apparently cannot or will not remove himself in time to avoid an impending peril, and after such discovery fails to exercise ordinary care to avoid causing injury to such other person, and it is strenuously urged that this doctrine has no application to a case where it is alleged, not that the person injuring another actually knew, in time to avoid such injury, of the danger of the latter. but that he should, in the exercise of reasonable care, have discovered such danger within such time. I cannot agree with this contention. Applying the last clear chance doctrine to the facts in the present case, I think it well settled that where a motorman in charge of an electric car either sees, or by the exercise of reasonable care should see, that a person rightfully on the track in front of such car cannot, or apparently will not, remove himself therefrom in time to avoid being struck by such car, and thereafter such

motorman fails to stop his car, although able, by the exercise of reasonable care, so to do, and thereby injures such person, the latter not being guilty of contributory negligence, concurring with that of the motorman, up to the moment of collision, such motorman is guilty of negligence, causing such collision, for which his employer is liable. Texas & P. Ry. Co. v. Nolan, 62 Fed. 552, 11 C. C. A. 202; Baltimore & O. R. Co. v. Anderson, 85 Fed. 413, 29 C. C. A. 235; Robinson v. Louisville Ry. Co., 112 Fed. 484, 50 C. C. A. 357; Philadelphia & Reading R. R. Co. v. Klutt, 148 Fed. 818, 78 C. C. A. 508; Illinois Central R. R. Co. v. O'Neill, 177 Fed. 328, 100 C. C. A. 658; Smith v. Baltimore & O. R. Co., 210 Fed. 414, 127 C. C. A. 146; Middlesex & B. St. Ry. Co. v. Egan, 214 Fed. 747, 131 C. C. A. 53; Dickson v. Chattanooga Ry. & Light Co., 237 Fed. 352, 150 C. C. A. 366, L. R. A. 1917C, 464; Huff v. Michigan United Traction Co., 186 Mich. 88, 152 N. W. 936; Hull v. Seattle R. & B. Railway Co., 60 Wash. 162, 110 Pac. 804; McKinney et al. v. Port Townsend & P. S. Ry. Co., 91 Wash. 387, 158 Pac. 107.

As was said by the Circuit Court of Appeals for this circuit in Robinson v. Louisville Ry. Co., supra:

"It was the duty of the motorman, in exercising the care incumbent on him, to ascertain whether the track ahead was clear, and to have his car under such control as to admit of its being stopped after he saw obstructions ahead of it. La Pountney v. Cartage Co., 116 Mich. 514, 74 N. W. 712, and cases there cited. It follows that if he could, by the exercise of due care, have seen the wagon in which the plaintiff was riding as far as other witnesses testified to have seen it, and if he could, after he should, by the exercise of due care, have seen it, gotten his car under such control as to have prevented the collision, it was his duty to have done so, and those questions should have been left to the determination of the jury."

In the language of Philadelphia & Reading R. R. Co. v. Klutt, supra:

"Not to have discovered what should have been under all the circumstances discovered was a part of defendant's negligence, subsequent to that of the plaintiff. The so-called doctrine of Davies v. Mann [10 Mees. & W. 546] supra, has been the subject of much refinement by courts and text-writers. We think, however, that Judge Acheson, speaking for this court in the former case, has laid down the true principle applicable to this case, as follows: 'It is a settled principle of law that, although a plaintiff, who sues for an injury inflicted by the defendant, might, by the observance of proper care, have avoided exposing himself to the injury, yet this will not prevent him recovering damages from the defendant, if the latter discovered, or by the exercise of ordinary care might have discovered, the exposed situation of the plaintiff in time, by the exercise of ordinary care and diligence, to have averted the effect of the plaintiff's negligence and avoided the injury which happened.' "

In Dickson v. Chattanooga Ry. & Light Co., supra, the Court of Appeals for this circuit said:

"It is well settled that one who is injured by a railroad train at a highway crossing, or by a street car in a street, may recover for such injury, notwithstanding his own initial or preceding contributory negligence in exposing himself to danger, provided he is using the street or highway at the time for a proper and legitimate purpose and his negligence has terminated, and provided, further, that the driver of the engine or street car, by the exercise of reasonable care and diligence, could have discovered his peril in time to avoid and prevent the accident."

In Huff v. Michigan United Traction Co., supra, it was said:

"We have carefully examined the authorities cited and relied upon by the defendant, and are of the opinion that the question whether the defendants agent, the motorman, should have discovered from the actions and situation of plaintiff his peril, and should have, but did not, take ordinary precaution to avert that peril, was one for the determination of the jury, under all the circumstances disclosed by the record in this case. Richter v. Harper, 95 Mich. 221, 54 N. W. 768; La Pontney v. Shedden Cartage Co., 116 Mich. 514, 74 N. W. 712; La Barge v. Pere Marquette R. Co., 134 Mich. 139, 95 N. W. 1073."

The principle applicable was thus stated in the somewhat similar case of McKinney v. Port Townsend & P. S. Ry. Co., supra:

"If the engineer or fireman had actually seen the automobile at a standstill on the track in time to stop, they could not have failed to appreciate the danger and necessity for stopping the train. Whether they did see the automobile come to a standstill in time to stop, or by the exercise of a reasonably careful lookout could have seen it in time to stop, were plainly, under the evidence in this case, questions for the jury."

In view of the testimony already referred to, it seems clear that the questions whether the motorman would, if keeping a proper lookout, have discovered the dangerous position of plaintiff's decedent in time to have avoided injuring him, and whether after such discovery he could, by the exercise of reasonable care, have stopped his car before the collision, were properly submitted to the jury.

I am satisfied that no error was committed on the trial, or in the charge to the jury, and that the verdict is not contrary to the weight of the evidence, and the contentions of defendant must therefore be overruled, and the motion for a new trial denied.